## BREISH v RING SCREW WORKS

Docket No. 56845. Argued April 6, 1976 (Calendar No. 14).—Decided
November 23, 1976.

Plaintiff Fred W. Breish brought an action for damages for
wrongful discharge from employment against Ring Screw
Works, and Local 771, International Union, United Automobile,
Aircraft and Agricultural Implement Workers of America, in
Oakland Circuit Court. The union secured removal of the cause
to the United States District Court which granted the union
summary judgment and remanded the case against the em-
ployer to the circuit court. The Oakland Circuit Court, Farrell
E. Roberts, J., granted summary judgment for the employer.
The Court of Appeals, Quinn, P. J., and Bashara and R. M.
Maher, JJ., affirmed on the grounds that a union employee
could not resort to the courts where the collective bargaining
agreement provides a grievance procedure as the employee's
exclusive remedy (Docket No. 19462). The grievance procedure
did not provide for binding arbitration as the final step, but for
a strike vote by the local union, and the local had voted not to
strike. Plaintiff appeals. *Held:*

1. Under the Federal Labor Management Relations Act indi-
vidual employees have the right to sue on collective bargaining
contracts negotiated between their union and employer. Courts
may not usurp those functions which collective bargaining
contracts have properly entrusted by the parties to the arbitra-
tion tribunal; however, the United States Supreme Court has
long recognized certain exceptions to the "finality rule".

2. Federal labor law precludes judicial review of a "final"
decision on the merits of an aggrieved employee's complaint
unless the final step of the grievance procedure in the collective
bargaining agreement is inadequate to provide a procedurally
fair decision.

3. A strike vote by an aggrieved employee's fellow union
members was inadequate to provide him the procedurally fair
final decision of his grievance to which he was entitled; the

REFERENCE FOR POINTS IN HEADNOTES

[1–5] 48 Am Jur 2d, Labor and Labor Relations §§ 391 *et seq.;* 1291–
1334.

grievance procedure placed the union members deciding the merits of the grievance in a conflict of interest.

4. A "final" determination of a discharged employee's grievance under a collective bargaining agreement by a vote of his union not to strike over the merits of his complaint does not preclude the employee from maintaining a suit for breach of contract against his former employer.

Summary judgment vacated and remanded to the circuit court for further proceedings.

59 Mich App 464; 229 NW2d 806 (1975) reversed.

1. LABOR RELATIONS—LABOR MANAGEMENT RELATIONS ACT—GRIEV-ANCE PROCEDURE—FINAL DECISION.

Judicial review of a "final" decision on the merits of an aggrieved employee's complaint is precluded under Federal labor law unless the final step of the grievance procedure in the collective bargaining agreement is inadequate to provide a procedurally fair decision (61 Stat 156; 29 USC 185[a]).

2. LABOR RELATIONS—LABOR MANAGEMENT RELATIONS ACT—GRIEV-ANCE PROCEDURE—FINAL DECISION—STRIKE VOTE.

A "final" determination of a discharged employee's grievance under a collective bargaining agreement by a vote of his union not to strike over the merits of his complaint does not preclude the employee from maintaining a suit for breach of contract against his former employer (61 Stat 156; 29 USC 185[a]).

3. LABOR RELATIONS—LABOR MANAGEMENT RELATIONS ACT—COLLECT-IVE BARGAINING AGREEMENT.

Individual employees have the right to sue in state courts on collective bargaining agreements between their union and em-ployer under the Labor Management Relations Act (61 Stat 156; 29 USC 185[a]).

4. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENT—GRIEV-ANCE PROCEDURE.

Courts may not usurp those functions which collective bargaining contracts have properly entrusted to the arbitration tribunal; they should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties to finally settle their disputes.

5. LABOR RELATIONS—LABOR MANAGEMENT RELATIONS ACT—GRIEV-ANCE PROCEDURE—FINAL DECISION—STRIKE VOTE.

A strike vote by an aggrieved employee's fellow union members was inadequate to provide him the procedurally fair final

decision of his grievance to which he was entitled; the griev-
ance procedure placed the union members deciding the merits
of the grievance in a conflict of interest (61 Stat 156; 29 USC
185[a]).

*Edward M. Miller* for plaintiff.

*Hyman & Rice* (by *Stanley H. Slazinski*) for
defendant Ring Screw Works.

WILLIAMS, J. This case involves a suit by a
discharged employee against his former employer
for breach of a collective bargaining contract. The
employee exhausted the contractual grievance pro-
cedure. At each applicable step of the procedure,
the employer denied the employee's grievance.
Under the terms of the collective bargaining con-
tract, the "final" decision on the merits of the
employee's grievance was, effectively, recourse to a
strike by his union. The union voted not to strike
over his complaint. We are asked to decide
whether the strike vote was the employee's sole
and exclusive mode of legal redress, thereby pre-
cluding him from maintaining a breach-of-contract
suit against the employer.

The Federal labor law on this question mandates
that judicial review of a "final" decision on the
merits of an aggrieved employee's complaint is
barred unless the final step of the grievance proce-
dure is inadequate to provide a procedurally fair
decision. In this case, the "final" determination of
the merits of the discharged employee's complaint
was the strike vote by his fellow union members.
The effect of this procedure is that the decision of
whether an employee should be discharged from
his employment is dependent on whether those
adjudging the merits of his claim choose to imperil
their own economic status; those desiring to rule
in favor of the discharged employee would pay the

price of giving up their own jobs. We believe such a "final" merits determination is contrary to the Federal labor law. We hold, therefore, that such a "final" decision on the merits of the employee's grievance does not bar the employee from maintaining a breach-of-contract suit against his former employer. We reverse the Court of Appeals and the trial court and remand to the trial court for consideration of the suit on its merits.

## I—FACTS

Plaintiff-appellant Breish was discharged from his employment by defendant-appellee Ring Screw Works on June 1, 1971 for alleged theft of company property, a small can of cleaner valued at less than one dollar. Ring Screw Works discharged Breish for what it considered "just cause", pursuant to the collective bargaining agreement in effect at that time between Ring Screw Works and UAW Local 771.[1]

That collective bargaining agreement included the following grievance procedure:

"Article IV
"Grievance Procedure
"Section 1. Should a difference arise between the Company and the Union, or its members employed by the Company as to the meaning and application of the provisions of the agreement, an earnest effort will be made to settle it as follows:

"Step 1. Between the employee, his steward, and the foreman of his department. If a satisfactory settlement is not reached, then

---

[1] Ring Screw Works had a collective bargaining agreement with UAW Local 771 at the time of Breish's discharge. The "discharge for just cause" provision of the collective bargaining agreement is found in the Seniority article, article V; the applicable language is: "Section 3. An employee shall lose seniority for the following reasons: * * * (b) The employee is discharged for just cause."

"Step 2. Between the Shop Committee, with or without the employee, and the Company management. If a satisfactory settlement is not reached, then

"Step 3. The Shop Committee and the Company may call in an outside representative to assist in settling the difficulty.

"Section 2. (a) Grievances alleging an unjust or discriminatory discharge must be submitted in writing to the foreman involved within two (2) working days of the discharge. The Company must render a final decision through the grievance procedure within four (4) working days of the receipt of such grievance.

"(b) Any employee who, as the result of such grievance is reinstated, shall be paid by the Company for the time which he would otherwise have worked for the Company and shall be returned to his regular job at his previous rate.

"Section 3. The Company shall not consider the grievance of any individual employee unless it is presented in writing under the grievance procedure within five (5) working days of their *[sic]* occurrence, excepting discharges which are governed by the preceding section.

"Section 4. Members of the Shop Committee and Chief Stewards shall be allowed the necessary time to adjust grievances.

"Section 5. An agreement reached between the Company and the Shop Committee under the grievance procedure shall be binding on all employees affected and cannot be changed by any individual."

In addition to the grievance procedure, the collective bargaining agreement included a provision which permitted the union to strike if and when "all negotiations have failed through the grievance procedure set forth herein".[2]

---

2

"Article XVI
"General

\* \* \*

"Section 7. The Union will not cause or permit its members to cause, nor will any member of the Union take part in any strike,

Breish filed a grievance three days after he was discharged. Ring Screw Works accepted the grievance, which was subsequently processed through the grievance procedure *supra.* Ring Screw Works denied Breish's grievance at each applicable step of the grievance procedure. On September 19, 1971, Breish submitted his grievance to the local union membership for a strike vote. The union membership voted to not strike over Breish's grievance; the vote was 10 "yes", 27 "no". Breish appealed the result of the strike vote to the UAW Convention Appeals Committee, as was his right under UAW International procedures. The UAW Convention Appeals Committee unanimously upheld the local union's strike vote.

After Breish exhausted the applicable steps of the grievance procedure without resolution of his grievance (and before Breish took his grievance to ᵗhe union membership for a strike vote) Breish sued Ring Screw Works and UAW Local 771 in Oakland Circuit Court on July 21, 1971. The defendant union had the action removed to the United States District Court (Eastern District of Michigan, Southern Division) on August 20, 1971. On Breish's motion, the "separate and independent * * * claims * * * against Ring Screw Works" were remanded to the Oakland County Circuit Court, August 22, 1972.

On October 10, 1973 the Federal District Court, per Judge Kennedy, granted the union its motion for summary judgment. The court found, as a matter of law, that even viewing the facts in a

either sit-down, stay-in or other kind of strike, or other interference, or any other stoppage, total or partial, of production at the Company's plant during the terms of this agreement *until all negotiations have failed through the grievance procedure set forth herein.* Neither will the Company engage in any lockouts until the same grievance procedure has been carried out." (Emphasis added.)

light most favorable to Breish, the union did not breach its duty of fair representation toward Breish as Breish had alleged.

After the Federal court decision, Ring Screw Works moved for summary judgment on the breach-of-contract suit before the Oakland County Circuit Court. On January 31, 1974, the court granted the motion for the reason that:

"The case of *Vaca v Sipes,* 386 US 171 [87 S Ct 903; 17 L Ed 2d 842] (1967), clearly indicates that, in cases such as the one presently before this court, the employee bears the burden of establishing that he was unjustly discharged *and* that the Union breached its duty of fair representation."

Breish appealed.

The Court of Appeals affirmed the trial court's holding but did so "for different reasons". 59 Mich App 464, 466; 229 NW2d 806 (1975). The Court rejected the circuit court's conclusion that Breish was precluded from bringing his action because the union had not breached its duty of fair representation toward Breish.[3] Instead, the court perceived "the primary question" to be "whether a union employee may resort to the courts where, having been discharged, the collective bargaining

[3] The Court noted:

"The United States Supreme Court in *Vaca v Sipes, supra,* held that an employee may bring an action against his employer without first exhausting the grievance procedure provided in a collective bargaining agreement, if the employee can prove the union as his bargaining agent breached its duty of fair representation.

* * *

"It is undisputed that plaintiff exhausted the grievance procedures provided in the collective bargaining agreement. It is also uncontroverted that by the judgment of the Federal District Court, the union did not breach its duty of fair representation. This being so, we reject the trial court's conclusion that plaintiff is precluded from bringing his action merely because the union did not breach any duty to the plaintiff." 59 Mich App 464, 466, 468.

agreement provides no right to arbitration of the dispute". 59 Mich App 464, 468. The Court answered this "primary question" negatively, holding:

"The many Federal cases here cited * * * lead us to the conclusion that where the contract provides a method of resolving grievances in a final and binding manner, the fact that arbitration is not used as a method of resolving disputes does not allow the parties automatic access to the courts." 59 Mich App 464, 470.

Breish applied for leave to appeal. This Court granted leave August 19, 1975.

## II—CONTEXT OF FEDERAL LABOR LAW

The issue in this case is narrow: we are asked to decide whether the strike vote of plaintiff's union, effectively the culminating step under the contractual grievance procedure, is plaintiff's sole and exclusive mode of legal redress, thus barring him from maintaining a breach-of-contract suit against defendant.

Although this might appear to be a simple, routine case on the surface, its resolution brings into play a broad spectrum of complex Federal labor relations law.[4] An essential reason for this

---

[4] Because plaintiff's suit is for breach of the collective bargaining contract, the suit arises under § 301 of the Labor Management Relations Act and is controlled by Federal law, even though it has been brought in state court. *Humphrey v Moore,* 375 US 335, 343–344; 84 S Ct 363; 11 L Ed 2d 370 (1964); *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v Lucas Flour Co,* 369 US 95, 102–104; 82 S Ct 571; 7 L Ed 2d 593 (1962). *See, Textile Workers Union of America v Lincoln Mills of Alabama,* 353 US 448; 77 S Ct 912; 1 L Ed 2d 972 (1957).

Section 301(a) of the Labor Management Relations Act is as follows:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organiza-

legal complexity is that the contract grievance procedure at issue is quite uncommon in the context of labor relations law.[5] According to one reputable estimate, 96 percent of the collective bargaining contracts in the United States include comprehensive contract grievance procedures culminating in final and binding arbitration;[6] most legal questions pertaining to the "finality" of a culminating step of a grievance procedure therefore revolve around the "finality" of arbitration decisions. Thus in the instant case we must interpret Federal law with respect to a relatively unique issue, an issue which, we note, has never been directly decided by the United States Supreme Court.

Because of the legal complexities involved, we believe it necessary, as an initial measure, to briefly discuss and define the applicable context of Federal labor law in which the issue arises. In *Smith v Evening News Ass'n,* 371 US 195; 83 S Ct 267; 9 L Ed 2d 246 (1962), the United States Supreme Court declared that under § 301 of the Labor Management Relations Act individual employees have the right and standing to sue on collective bargaining contracts negotiated between their union and their employer.[7] Subsequent to

tions, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 61 Stat 156, 29 USC 185(a).

[5] The kind of grievance procedure in issue here, one which culminates in a strike vote, is, in fact, opposite to arbitration; the contractual agreement to arbitrate grievance disputes is considered as *quid pro quo* of a no-strike agreement. *Textile Workers Union v Lincoln Mills,* 353 US 448, 455; 77 S Ct 912; 1 L Ed 2d 972 (1957).

In the instant case, instead of a grievance procedure culminating in arbitration, we have a procedure which culminates in an option to strike.

[6] *See,* 2 Bureau of National Affairs, Collective Bargaining Negotiations and Contracts, 51:6–9 (1975).

[7] In *Smith,* the Court determined that suits seeking to vindicate "uniquely personal" rights of employees such as wages, hours, over-

*Smith,* the Court circumscribed this broadly stated right of employees to sue under § 301. Accordingly, in *Republic Steel Corp v Maddox,* 379 US 650; 85 S Ct 614; 13 L Ed 2d 580 (1965), the Court determined that an individual employee is precluded from suing under § 301 unless he first attempts to exhaust the remedial procedure of the collective bargaining contract.[8]

---

time pay, and wrongful discharge come within the coverage of § 301. The Court declared:

"The rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiations and administration of collective bargaining contracts. Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law. This we are unwilling to do." 371 US 195, 200.

In *Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America v Lockridge,* 403 US 274; 91 S Ct 1909; 29 L Ed 2d 473 (1971), the Court elaborated on the causes of action which arise under § 301:

"Our cases * * * clearly establish that individual union members may sue their employers under § 301 for breach of a promise embedded in the collective-bargaining agreement that was intended to confer a benefit upon the individual. *Smith v Evening News,* [371 US 195]. * * *

"This Court has further held in *Humphrey v Moore,* [375 US 335], that § 301 will support * * * a suit in the state courts by a union member against his union that seeks to redress union interference with rights conferred on individual employees by the employer's promises in the collective-bargaining agreement, where it is proved that such interference constituted a breach of the duty of fair representation. Indeed, in *Vaca v Sipes,* 386 US 171 (1967), we held that an action seeking damages for injury inflicted by a breach of a union's duty of fair representation was judicially cognizable in any event, that is, even if the conduct complained of was arguably protected or prohibited by the National Labor Relations Act and whether or not the lawsuit was bottomed on a collective agreement." 403 US 274, 298–299.

[8] In *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 176 L Ed 2d 842 (1967), the Court qualified the *Maddox* "attempt" requirement that an aggrieved employee must attempt to exhaust the contractual grievance procedures as a condition precedent to a § 301 suit. The Court perceived that "because these contractual remedies have been devised

However, under the *Maddox* rule, initially procedural in nature, certain consequences ensue with respect to the merits of the aggrieved employee's complaint once he has exhausted the contract grievance procedure to its final step. For example, if an employee exhausts a grievance procedure which has as its culminating step "final and binding" arbitration, the strong and established Federal labor law policy pronounced by the Court in the famous *Steelworkers* trilogy[9] comes into play. As the Supreme Court recently reiterated in *Hines v Anchor Motor Freight, Inc,* 424 US 554; 96 S Ct 1048; 47 L Ed 2d 231 (1976):

and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant". 386 US 171, 185. Posing the question "under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures", the Court maintained that a situation which would allow such judicial review of the breach-of-contract claim would arise when "the union has sole power under the contract to invoke the higher stages of the grievance procedure, and * * * the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance". 386 US 171, 185. The Court declared:

"To leave the employee remediless in such circumstances would, in our opinion, be a great injustice. We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that Congress intended to shield employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements. Cf. *Richardson v Texas & N O R Co, 242 F2d 230, 235–236* [CA 5, 1975].

"For these reasons, we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." 386 US 171, 185–186.

[9] *United Steelworkers of America v American Mfg Co,* 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960); *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960); *United Steelworkers of America v Enterprise Wheel & Car Corp,* 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960).

"Collective-bargaining contracts, however, generally contain procedures for the settlement of disputes through mutual discussion and arbitration. These provisions are among those which are to be enforced under § 301. Furthermore, Congress has specified in § 203(d), 61 Stat 153, 29 USC 173(d), that '[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes * * * '. This congressional policy 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective-bargaining agreement is given full play.' *United Steel Workers v American Mfg Co*, 363 US 564, 566 (1960). Courts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.' *Id*, at 569. They should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes. Otherwise 'plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final.' *United Steel Workers v Enterprise Wheel & Car Corp*, 363 US 593, 599 (1960)."

In addition, the Court, in *General Drivers, Warehousemen & Helpers, Local Union No 89 v Riss & Co, Inc*, 372 US 517; 83 S Ct 789; 9 L Ed 2d 918 (1963). extended the ambit of the *Steelworkers* trilogy rationale to encompass the final and binding decision of a joint committee, holding such a decision enforceable under § 301 like an arbitration award. The effect of the *Steelworkers* trilogy and *Riss* is, therefore, that an individual employee is barred from maintaining a § 301 suit on the merits of his grievance after exhausting a grievance procedure to the final step of a procedure culminating in either a "final and binding" arbitration decision or a "final and binding" joint committee decision. This is, essentially, what the

Court has characterized as the "finality rule". See *Hines v Anchor Motor Freight, Inc,* 424 US 554.

### III—THE "FINALITY RULE" NEED NOT BE OBSERVED WHEN THE UNION BREACHES ITS DUTY OF FAIR REPRESENTATION OR WHEN THE FINAL STEP OF THE GRIEVANCE PROCEDURE IS INADEQUATE TO PROVIDE THE INDIVIDUAL EMPLOYEE A PROCEDURALLY FAIR DECISION ON THE MERITS OF HIS CLAIM

In the instant case, the Court of Appeals concluded that:

"[A]fter defendant had issued its final decision to discharge, plaintiff formally requested a strike vote of his union. The local union rejected plaintiff's request to carry the matter further by voting not to strike in support of his claim. It was at this point that the decision denying plaintiff relief became final." 59 Mich App 464, 470.

The effect of the Court of Appeals conclusion is that the "settlement" or "resolution" of the merits of plaintiff's unsettled grievance is the decision of his fellow union members not to strike over his grievance.

The direct issue before us is whether such a "final" decision comes within the protection of the "finality rule".

As we have noted, the United States Supreme Court has never directly addressed whether such means chosen for settlement of disputes would bar an employee from maintaining suit under § 301 after he has exhausted the contractual grievance procedure available to him. Therefore, in order to address this issue directly, it is necessary that we first answer a threshold question, namely, whether

an individual employee is barred from maintaining a § 301 suit after exhausting a grievance procedure to the final step of a procedure culminating in either the "final" decision of an arbitration or joint committee in *every* case. An answer to this question will provide us with the needed Federal labor law policy to adequately answer the question raised by the issue before us.

When we look at the Federal cases, we find that the Supreme Court has long recognized certain exceptions to the "finality rule", thereby allowing individual employees recourse to court suit and judicial review of "final" arbitration or joint committee decisions. It is clear that the "finality rule" need not be observed when an employee proves that his union violated its duty of fairly representing his interests in the contractual proceedings. *Vaca v Sipes, supra.*

In the recent Supreme Court case, *Hines v Anchor Motor Freight, Inc, supra,* the Court held that although a joint arbitration committee reached a "final" decision affirming the discharge of aggrieved employees, if there is sufficient evidence showing a union's breach of its duty of fair representation, the aggrieved employees may sue the union for breach of its duty of fair representation *and* the employer for breach of contract under § 301. The Court, recognizing that "grievance processes cannot be expected to be error-free" nonetheless concluded:

"But it is quite another matter to suggest that erroneous arbitration decisions must stand even though the employee's representation by the union has been dishonest, in bad faith or discriminatory; for in that event error and injustice of the grossest sort would multiply. The contractual system would then cease to qualify as an adequate mechanism to secure individual redress for

damaging failure of the employer to abide by the contract." 424 US 571.

The Court ruled:

"Congress has put its blessing on private dispute settlement arrangements, but it was anticipated, we are sure, that *the contractual machinery would operate within some minimum levels of integrity.*" (Emphasis added.) 424 US 571.

Such a "minimum level of integrity" would not be maintained, the Court concluded, if "[w]rongfully discharged employees would be left without jobs and without a fair opportunity to secure an adequate remedy". 424 US 571.

The Court in *Hines* cited, with approval, two Third Circuit Court of Appeals cases, *Rothlein v Armour & Co, Inc,* 391 F2d 574 (CA3, 1968), and *Bieski v Eastern Automobile Forwarding Co,* 396 F2d 32 (CA 3, 1968). 424 US 571, fn 11. In *Rothlein,* the question before the court was whether a "final" decision by a joint union-management committee regarding the jurisdiction of an employee's grievance under the contract was enforceable under the "finality rule". Recognizing the strong potential for the "coincidence of union and employer interests", the court stated that:

"In deciding whether the grievance procedure provides an acceptable 'merits' determination, in light of the possible unity of union and management interest, *the type of procedure afforded becomes relevant.*" (Emphasis added.) 391 F2d 574, 580.[10]

---

[10] The court in *Rothlein* declared in fn 28:

"While 'arbitration' is clearly favored under federal labor policy, *e.g.* the *Steelworkers* cases, * * * other types of 'settlement' may not be as intrinsically satisfactory since further from a 'judicial' model." 391 F2d 574, 580.

In *Bieski,* confronted with essentially the same issue, the court reiterated and articulated the *Rothlein* rule further:

"If the court is convinced both that the contract procedure was intended to cover the dispute and, in addition, *that the intended procedure was adequate to provide a fair and informed decision,* then review of the merits of any decision should be limited to cases of fraud, deceit, or instances of unions in breach of their duty of fair representation." (Emphasis added.) 396 F2d 32, 38.

The clear, unequivocal conclusion to be drawn from the *Humphrey, Hines, Rothlein* and *Bieski* cases is this:

1) when a union has breached its duty of fair representation, an aggrieved employee may seek judicial review of the "final" decision on the merits of his claim reached at the culminating step of the contract procedure;

2) when the final step of the grievance procedure is inadequate to provide an aggrieved employee with a procedurally fair decision, the aggrieved employee may seek judicial review on the merits of his claim.[11]

---

[11] The Supreme Court's awareness of assuring an individual employee fair treatment within the contract procedure—both before and after he has exhausted the procedure—has been implicitly recognized in other cases touching upon individual employee rights under collective bargaining contracts. In *Republic Steel v Maddox, supra,* the Court pronounced that if the union did not refuse to press or "perfunctorily" press an individual's claim, a rule requiring that individual employees attempt to exhaust the contract grievance procedure would not substantially undermine the individual employees' rights because "it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so". 379 US 650, 653. The Court recognized that "in the normal situation" the contract grievance procedure is undoubtedly the best-suited remedy for an aggrieved

## IV—A "FINAL" DECISION BY A STRIKE VOTE IS INADEQUATE TO PROVIDE A PROCEDURALLY FAIR DECISION

We now address the issue before us. As we have stated, the effect of the Court of Appeals conclu-

employee; an essential purpose of contract grievance procedures is to provide a fair, stabilizing remedy which can effectively and adequately resolve individual claims arising out of the collective bargaining contract. But the Court also emphasized that if the contract procedures proved *inadequate* to "protect the interests of the aggrieved employee", the individual employee must be allowed another form of redress, so that his interests remain protected. *See,* 379 US 650, 652–653.

This judicial awareness of safeguarding an individual employee's right to be fairly treated within contractual grievance procedure prior to his exhaustion of the procedure is also apparent in *Vaca v Sipes, supra.* In *Vaca,* the Court reiterated that the union has a statutory duty to fairly represent an individual employee's interests under the collective bargaining agreement. In fact, as we have noted *(see* fn 8, *supra),* if the union breaches this duty before an employee has exhausted the grievance procedure (a condition precedent to seeking court aid), an employee can bypass the contractual remedial procedure and seek redress in court against the union (for breach of its duty of fair representation toward the employee) and the employer (for breach of contract, in a § 301 suit).

Once a grievance procedure has been exhausted to its final step, the Court is still careful to protect the individual employee by assuring him a "final" decision on the merits of his claim which is procedurally fair. As we have seen, the Court, in the famous *Steelworkers* trilogy, sanctioned the "final" decision of an arbitrator as enforceable (under § 301) and, effectively, the aggrieved employee's "final" merits determination. Although the Court did not elaborate upon the procedural safeguards inherent in arbitration, it is clear from the language of the *Steelworkers* cases that one of the reasons the Court recognized the Federal labor law policy of deferring individual claims to arbitration procedures was the Court's intense awareness of the protective aspects of arbitration from the employee's standpoint. In *Steelworkers v Warrior & Gulf, supra,* the Court perceived arbitration as "the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties". 363 US 574, 581. According to the Court, "[t]he ablest judge cannot be expected to bring the same experience and competence [as the arbitrator] to bear upon the determination of a grievance, because he cannot be similarly informed". 363 US 574, 582. As the Court pronounced in *Steelworkers v Enterprise Corp, supra,* the arbitrator, when interpreting and applying the collective bargaining contract, brings an "informed judgment to bear in order to reach a fair solution of a problem". 363 US 593, 597.

sion in the instant case is that the "settlement" of the merits of plaintiff's grievance is the decision of his fellow union members not to strike over his grievance. Does such a "final" decision come within the protection of the "finality rule"? Our answer is no. As we have seen in our analysis of the *Hines, Rothlein* and *Bieski* cases, the Federal labor law mandates that when the final step of a grievance procedure is inadequate to provide an aggrieved employee with a procedurally fair decision, the aggrieved employee may seek judicial review on the merits of his claim. Adopting and applying this rule, we hold that a strike vote by plaintiff's fellow union members was inadequate to provide plaintiff the kind of procedurally fair decision to which he was entitled under the Federal labor law. We find the "strike vote" decision unsatisfactory for the essential reason that such a procedure placed those "adjudging" the substance of plaintiff's claim in a legally unacceptable conflict of interest position.[12] Even if we assume that plaintiff's fellow union members believed he was wrongfully discharged under the collective bargaining contract, some may have felt that it was not worth imperiling their own economic or employment status by going out on strike over his grievance. From another perspective, it is crucial to note that in such a procedure the union, as plaintiff's agent, played no active part in the decision-making process itself. In the instant case, the union did not breach its duty of fair representation toward plaintiff permitting the employee to take the matter to court. Thus, plaintiff, left without a court remedy, is left instead to the "remedy" of a procedure in

---

[12] In *Rothlein, supra,* the "possible unity of union and management interest" 391 F2d 574, 580, in other words, a conflict of interest situation, was the essential basis for the court's holding that an otherwise "final" decision should be disregarded.

which the decision of whether he was wrongfully discharged is "adjudged" by persons in a conflict of interest position. We believe that such a procedure was inadequate to provide plaintiff any kind of fair merits decision. In addition, we recall, with emphasis, what Justice BRENNAN, speaking for our unanimous Court, forcefully declared in *Lowe v Hotel & Restaurant Employees Union, Local 705,* 389 Mich 123; 205 NW2d 167 (1973):

"Every man's employment is of utmost importance to him. It occupies his time, his talents, and his thoughts. It controls his economic destiny. It is the means by which he feeds his family and provides for their security. It bears upon his personal well-being, his mental and physical health.

"In days gone by, a man's occupation literally gave him his name. Even today, continuous and secure employment contributes to a sense of identity for most people.

"It is no solace to a man fired from his job that his union acted without spite, animosity, ill will, and hostility toward him. If he has been wrongfully discharged by his employer, in violation of his contract of employment, a collective bargaining agreement made for his benefit and protection, it is unthinkable that he should be denied relief—denied justice—by the courts." 389 Mich 123, 148.

To leave the determination of the merits of plaintiff's claim to a "strike vote" by his fellow union members not only denies plaintiff adequate legal relief, it also denies him the basic justice he is legally assured under the Federal labor law. Therefore, plaintiff should not be barred from maintaining a § 301 suit for breach of contract against the employer; to hold otherwise, "[t]he contractual system would then cease to qualify as an adequate mechanism to secure individual re-

dress for damaging failure of the employer to abide by the contract". *Hines v Anchor Motor Freight, Inc,* 424 US 571. Plaintiff, under his § 301 statutory right, must be allowed to vindicate his rights in a forum which will assure him adequate procedural fairness.

We are well aware that the Fifth Circuit Court of Appeals, confronted with a fact situation similar to that before us, arrived at a different legal conclusion in *Haynes v United States Pipe & Foundry Co,* 362 F2d 414 (CA 5, 1966).[13] The Fifth Circuit's "finality rule" which evolved out of the *Haynes* case[14] was succinctly expressed by that

[13] In *Haynes,* the employee was discharged by his employer. The collective bargaining contract provided a four-step grievance procedure, culminating in the following provision:

"4. If no settlement is reached in step three, the grievance shall be referred to an International Vice President of the Union and the Plant Manager, who shall meet at their earliest convenience within ten (10) calendar days after the decision has been rendered in step three, and the Plant Manager shall make his written decision within seven (7) calendar days following this meeting. Such decisions by the Plant Manager shall be final and binding upon all parties involved, unless the International Vice President of the Union notifies the Plant Manager, by certified mail, within fourteen (14) calendar days thereafter of the Union's intentions to strike in protest of such decision, and such strike shall commence on the fourth work day following the date said notice is mailed to the Company." 362 F2d 414, 415–416.

The union carried the employee's grievance through the fourth step without success, but decided against a strike. Thereafter, the employee brought a § 301 suit against his former employer in Federal court.

[14] In *Haynes,* the Court phrased the issue relevant to us as follows: "whether the doors of the court open [to an employee] after the contractual remedy has been exhausted". 362 F2d 414, 417. The Court, after discussing what it perceived as the applicable Federal labor law regarding the issue held:

"The fact of the matter here is that the union processed appellant's grievance up to the point of striking. The denial of his claim then became final. We believe the law to be that his claim was thereby barred. The court has jurisdiction. *Smith v Evening News Association, supra.* The action under the grievance procedure, here a final decision under the terms of the agreement, may be asserted in bar as an affirmative defense. That is this case, and thus it must be affirmed." 362 F2d 414, 418.

We have no problem with the jurisdictional aspect of the Court's

court in *Harris v Chemical Leaman Tank Lines, Inc,* 437 F2d 167 (CA 5, 1971):

holding. But, regarding the "finality" aspect, we find the Court's conclusion was based on somewhat cryptic legal reasoning. The Court first noted that the employee "argues that the implication may be gained from some of the language * * * in *Maddox* that the employee may sue once he has exhausted his remedy under the grievance procedure of the collective bargaining agreement. There is some such language, but there is other language, equally compelling, to the contrary". 362 F2d 414, 417–418. However, we do not find any language in *Maddox* which supports the conclusion that an employee may not sue once he has exhausted his remedy under the contractual procedure. The court in *Maddox* did state that "it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect interests of an aggrieved employee until the employee has attempted to implement the procedure and found them so". 379 US 650, 653. This statement implies that if the employee does, in fact, find the procedure "inadequate" after utilizing it, the employee might be allowed to sidestep the grievance procedure and sue under § 301. But regardless of whether such a conclusion can be drawn, the Court in *Maddox* did not intimate that the grievance procedure was the individual's exclusive mode of legal redress. *See,* Note, *Section 301(a) and the Employee: An Illusory Remedy,* 35 Fordham L Rev 517, 527 (1967).

After asserting that there was "compelling" language in *Maddox* to support the proposition that a grievance procedure is an individual grievant's sole legal recourse, the *Haynes* court shifted its reliance to two Sixth Circuit Court of Appeals cases, *Hildreth v Union News Co,* 315 F2d 548 (CA 6, 1963), *cert den,* 375 US 826; 84 S Ct 69; 11 L Ed 2d 59 (1963), and *Simmons v Union News Co,* 341 F2d 531 (CA 6, 1965), *cert den* 382 US 884; 86 S Ct 165; 15 L Ed 2d 125 (1965). [The 1961 *Hildreth* opinion, *United News Co v Hildreth,* 295 F2d 658 (CA 6, 1961), fully stated the case and the Sixth Circuit's conclusion of law. The 1963 opinion merely reaffirmed the first opinion's validity in light of *Smith v Evening News Ass'n, supra. Simmons* also reaffirmed *Hildreth* in light of *Humphrey v Moore, supra.]*

In *Hildreth,* the plaintiff was an employee at a lunch counter which was losing profits, apparently from a mishandling of funds and goods. Defendant employer told the union that it wanted to discharge all the employees who worked at the counter. The union finally agreed to a temporary replacement of five employees, to become permanently discharged if improvement was shown regarding mishandled funds. Plaintiff, one of the five employees arbitrarily chosen, and, eventually, permanently discharged, had a perfect ten-year working record. Defendant never contended that the plaintiff mishandled merchandise or money. The Sixth Circuit held that the union had authority, as agent of the employee acting in the collective interest, to agree with the employer to temporarily discharge five employees merely on suspicion of theft, and to make the discharge permanent upon a showing of improvement in business operations.

The court in *Haynes* merely noted, with regard to the substantive

"Assuming that grievance procedures have been exhausted by the union, the individual grievant is ordinarily bound by a resulting adverse decision which is 'final' and 'binding' on the parties to the contract. *Boone v Armstrong Cork Co,* 384 F2d 285 (CA 5, 1967); *Haynes v United States Pipe & Foundry Co,* 362 F2d 414 (CA 5, 1966). 'Final adjustment by a method agreed upon by the parties' being the declared goal of federal labor policy [§ 203(d), Labor Management Relations Act, 29 USCA 173(d)] courts will refuse to review the merits of such a decision *[United Steelworkers of America v Enterprise Wheel & Car Corp,* 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960); *United Steelworkers v Warrior & Gulf Nav Co, supra; United Steelworkers v American Mfg Co,* 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960).]" 437 F2d 167, 171.

With all due respect to the Fifth Circuit, we question the soundness of this rule in light of the Federal labor law policy we have analyzed *supra.*

aspects of *Hildreth,* that "the court determined that the claim of an employee was barred by her union's agreement with the employer that there was just cause for the discharge". Apparently the court relied upon this "holding" to support its conclusion that an individual employee is bound by the remedy chosen by his union, acting as his agent. But, importantly, *Hildreth* was decided prior to *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967). In our opinion, it is highly questionable whether the union's actions in *Hildreth* withstand scrutiny under the *Vaca* rule, which states: "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." 386 US 171, 190. Here, the union's agreement to discharge the employee—without any proof of wrongdoing—was clearly arbitrary. *See,* Comment, *Protection of Individual Rights in Collective Bargaining: The Need for a More Definitive Standard of Fair Representation Within the* Vaca *Doctrine,* 14 Vill L Rev 484, 492–493 (1969).

After *Haynes,* the Fifth Circuit abandoned the *Maddox* and *Hildreth* cases as its rationale for the *Haynes* "finality rule". In *Harris v Chemical Leaman Tank Lines, Inc,* 437 F2d 167 (CA 5, 1971), a post-*Vaca* case, the court charted the legal basis of its "finality rule" to § 203(d), as cited with approval in *Steelworkers v American Mfg Co,* 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960). We therefore assume that this is presently the legal basis for the Fifth Circuit rule, not *Maddox* or *Hildreth.*

The Fifth Circuit substantiates its "finality rule" by citing the first case of the *Steelworkers* trilogy, *American Mfg Co, supra,* where the Supreme Court recognized congressional policy as stated in § 203(d) of the LMRA:

"Section 203(d) of the Labor Management Relations Act, 1947, 61 Stat 154, 29 USC 173(d), states, 'Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * * ' That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." 363 US 564, 566.

The Fifth Circuit, in its "finality rule," interprets this language to the effect that § 203(d), read in conjunction with the *Steelworkers* trilogy, sanctions *any* "means chosen by the parties for settlement of their differences * * * ". We do not believe Federal labor law permits such a conclusion. In *American Mfg Co,* the Court quite clearly cited § 203(d) of the LMRA as congressional endorsement of the "stabilizing influence" of *arbitration.* As we have noted, inherent to the Court's recognition of arbitration in the *Steelworkers* trilogy is the recognition of the procedural safeguards afforded employees in "final" arbitral decisions (see fn 11). Therefore, there is an inherent procedural limitation to the scope of § 203(d), and the "full play" parties are given for settling their differences. The Fifth Circuit, in affirming a strike vote as the "final" decision on the merits of an aggrieved employee's claim in the *Haynes* case, essentially undermines this procedural dimension of the *Steelworkers* trilogy.

Our analysis has shown this "procedural dimen-

sion" of § 203(d) as cited in the *Steelworkers* trilogy has been given clear judicial recognition by the Third Circuit Court of Appeals in *Rothlein, supra, Bieski, supra,* and by the Supreme Court in *Hines, supra.* As the Supreme Court declared in *Hines, supra:*

"Congress has put its blessing on private dispute settlement arrangements provided in collective agreements, but it was anticipated, we are sure, that the contractual machinery would operate within some minimum levels of integrity." 424 US 571.

Under the Fifth Circuit's "finality rule" a "strike vote" merits decision can legally constitute an aggrieved employee's sole, exclusive mode of redress. But such a "merits determination" is clearly contrary to the rule which arises out of *Rothlein, Bieski,* and, most importantly, *Hines,* that a culminating "merits determination" be adequate to provide an aggrieved employee a procedurally fair decision. If we were to endorse such a procedurally inadequate, unfair "final decision", we would be endorsing contractual machinery which operated without the minimal level of integrity mandated by the Supreme Court in *Hines.* We are compelled, therefore, to reject such a "final" merits decision and any legal rule which supports the finality of such a decision as radically at odds with both the spirit and the Federal labor law policy articulated by the Supreme Court in every important case pertaining to an individual employee's rights under a collective bargaining contract.

## V—Conclusion

Because in the instant case the "resolution" of plaintiff's grievance, a strike vote by his fellow

union members, was procedurally inadequate to provide the kind of fair decision to which plaintiff is entitled under the Federal labor law articulated in *Hines, Bieski,* and *Rothlein,* we vacate the summary judgment and remand to the trial court for action not inconsistent with this opinion.

Costs to plaintiff.

KAVANAGH, C. J., and LEVIN, COLEMAN, FITZGERALD, LINDEMER, and RYAN, JJ., concurred with WILLIAMS, J.