Arthur. GROVES and Local 771, UAW (88–1452); Bobby J. Evans and Local 771, UAW (88–1579), Plaintiffs–Appellants,

v.

RING SCREW WORKS, a Michigan Corporation, FERNDALE FASTENER DIVISION, Defendant–Appellee.

Nos. 88–1452, 88–1579.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 21, 1989.

Decided Aug. 16, 1989.
Rehearing and Rehearing En Banc Denied Oct. 23, 1989.

William Mazey (argued), Rothe, Mazey, Mazey & Hamburger, Southfield, Mich., for Arthur Groves, Bobby J. Evans, and Local 771, UAW, Plaintiffs–Appellants.

Richard M. Tuyn (argued) and Terrance V. Page, Clark, Hardy, Lewis, Pollard & Page, Birmingham, Mich., for Ring Screw Works, a Michigan Corp., Ferndale Fastener Div., defendant-appellee.

Before WELLFORD, NELSON and NORRIS, Circuit Judges.

WELLFORD, Circuit Judge.

We are concerned with two cases, consolidated on appeal, in which the district courts dismissed employee claims under § 301 of the Labor Relations Management Act holding that the collective bargaining agreement (CBA) provided that a strike or other job action was the exclusive means of grievance resolution. The applicable CBAs provided that the parties were bound if an agreement was reached at some stage of the prescribed process. If the grievance procedure failed to resolve the grievance, the union might strike, but exhaustion of the contract procedure was required before the union could take such action.

The relevant facts are not disputed. Ring Screw Works (Ring) employed both plaintiffs, Arthur Groves and Bobby J. Evans. Ring terminated Groves for allegedly excessive, unexcused absences. Ring dismissed Evans for allegedly falsifying company records. Groves and Evans, on the other hand, contend that Ring fired them without due cause and violated the CBAs. Groves and Evans brought separate lawsuits against Ring in state court for wrongful discharge. The union joined as plaintiff in both cases. Ring filed a petition for removal in both cases, claiming that the causes of action could have been brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[1] Ring filed motions for summary judgment in both cases, which the district judge granted, holding that the plaintiff could not bring a cause of action under § 301 without alleging that their union breached its duty of fair representation. We affirm.

The issue in both cases is whether the grievance procedures contained in the CBAs were the exclusive means for resolving disputes, thus precluding a direct action for breach of contract absent an allegation that the union breached its duty of fair representation.

Both CBAs prescribed a multi-step grievance procedure in which the employee, management representatives, and union representatives were called upon to resolve the dispute.[2] If the parties are unable to

---

1. Section 301 preempts state law to the extent the action involves an interpretation of the CBA. *See, e.g., Allis–Chalmers v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). *See also Lingle v. Norge Division of Magic Chef,*

*Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

2. The CBA, by which Groves was bound, stated: Section 1. Should a difference arise between the Company and the Union or its members

resolve the grievance, binding arbitration is available only "by mutual agreement in discharge cases only."

In addition, Groves' CBA included this no strike clause:

The Union will not cause or permit its members to cause, nor will any member of the Union take part in any strike, either sit-down, stay-in or any other kind of strike, or other interference, or any other stoppage, total or partial, or production at the Company's plant during the terms of this agreement *until all negotiations have failed through the grievance procedure set forth herein.* Neither will the Company engage in any lockouts until the same grievance procedure has been carried out.

Evans' CBA contained the same no strike clause but also provided that "[u]nresolved grievances (except arbitration decisions) shall be handled as set forth in [the no strike clause]."

In both cases the district court construed the CBAs to provide that if a grievance were not resolved through the grievance procedures, the union's only option was to strike. In the case of Evans, a strike vote was taken by the unit members at the plant where Evans was employed, but the vote failed to carry the required two-thirds majority; however, in Groves' case, no strike vote was taken. In both cases the district court concluded by summary judgment that plaintiffs were bound by the results of the grievance procedure and/or the strike vote because the grievance procedures were exclusive, and therefore could not bring a § 301 cause of action without alleging that the union breached its duty of fair representation.

The question before the court is whether an employee and union may bring a § 301 cause of action against the employer for discharge in violation of the CBA if: (1) the union did not breach its duty of fair representation; (2) the CBA has a grievance procedure which was exhausted without reaching a settlement; (3) the CBA permits binding arbitration only with the consent of both parties as to which the employer refused arbitration; and (4) the CBA permits a strike when the grievance procedure fails to produce an agreement or arbitration.

Section 301 of the Labor Management Relations Act (LMRA) provides:

Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district

---

employed by the Company, as to the meaning and application of the provisions of the agreement, an earnest effort will be made to settle it as follows:

Step 1. Between the employee, his steward and the foremen of his department. If a satisfactory settlement is not reached then

Step 2. Between the Shop Committee, with or without the employee, and the Company Management. If a satisfactory settlement is not reached then

Step 3. The Shop Committee and/or the Company may call the Local Union President and/or the International Representative to arrange a meeting in an attempt to resolve the grievance. If a satisfactory settlement is not reached then

Step 4. The Shop Committee and the Company may call in an outside representative to assist in settling the difficulty. *This may include arbitration by mutual agreement in discharge cases only.*

Section 2. Grievances alleging an unjust or discriminatory discharge must be submitted in writing to the foreman involved within two (2) working days of the discharge. The Company must render a disposition within four (4) working days of the receipt of such a grievance.

Section 3. The Company shall not consider the grievances of any individual employee unless it is presented in writing under the grievance procedure within five (5) working days of their occurrence, excepting discharges which are governed by the preceding section. The Company will render a disposition within five (5) working days of receipt of such grievance.

Section 4. Members of the Shop Committee and chief stewards shall be allowed the necessary time to investigate and adjust grievances promptly.

Section 5. An agreement reached between the Company and the Shop Committee under the grievance procedure shall be binding on all employees affected and cannot be changed by any individual.

(Emphasis added). The CBA by which Evans was bound, contained similar terms but also included express time limitations and writing requirements.

court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a).

■ Section 301 "is not to be given a narrow reading." *Smith v. Evening News Association,* 371 U.S. 195, 199, 83 S.Ct. 267, 269, 9 L.Ed.2d 246 (1962). Individual suits may be brought under § 301; actions thereunder are not constricted to those brought by labor unions. *Id.* at 200, 83 S.Ct. at 270. An employee may bring an action under § 301 against his employer if he has been dismissed in violation of the CBA. *Id.* at 195, 83 S.Ct. at 267. However, courts have consistently favored the resolution of labor disputes through arbitration where a CBA so provides. *See United Steel Workers of America v. American Manfacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steel Workers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steel Workers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Therefore, an employee is required to exhaust any grievance procedure contained in his CBA before initiating an action under § 301 against his employer. *Clayton v. International Union,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Anderson v. Ideal Basic Industries,* 804 F.2d 950, 952 (6th Cir. 1986); *see also Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). In addition, if a CBA contains exclusive and final procedures for the resolution of employee grievances, unlike the agreement in *Smith,* the employee's ability to bring an action under § 301 will be severely restricted. *See Smith,* 371 U.S. at 196 nn. 1 & 9, 83 S.Ct. at 268 nn. 1 & 9; *see also U.S. Bulk Canners v. Arguelles,* 400 U.S. 351, 358, 91 S.Ct. 409, 413, 27 L.Ed.2d 456 (1971) (Harlan, J., concurring); *Ames v. Westinghouse Elec. Corp.,* 864 F.2d 289, 292 (3d Cir.1988) ("If, however, the collective bargaining agreement contains procedures for settlement of disputes through grievance and arbitration, these contractual remedies are

binding on individual employees ..."); *Hart v. Nat'l Homes Corp.,* 668 F.2d 791, 793 (5th Cir.1982).

■ Plaintiffs concede the exhaustion requirement and claim to have in fact exhausted the avenues of relief available to them under the grievance procedures. However, plaintiffs claim that the failure to reach an agreement after exhausting the grievance procedure allows them to proceed in federal court on a straight § 301 action against their employer.

We cannot agree. This court has previously concluded that failure to reach an agreement through a similar grievance procedure nevertheless produced a final decision and such procedure was deemed exclusive. *See Fortune v. Nat'l Twist Drill & Tool Division, Lear Siegler, Inc.* 684 F.2d 374 (6th Cir.1982). In *Fortune,* two employees brought an action seeking federal court review of their discharges by their employer.

> [I]n each instance, the grievance was filed concerning each discharge and was prosecuted by the union through a four-step grievance procedure without any agreement being reached.... [T]he labor contract provided that the union could strike if "all negotiations have failed through the grievance procedure." In each of these instances, while the final decision was that of management, since the labor management contract did not provide for arbitration, the union's only recourse in further prosecuting the grievance would be to strike. In each instance, the membership of the union voted not to strike.

*Id.* at 375. In *Fortune,* we relied upon *Haynes v. United States Pipe and Foundry Co.,* 362 F.2d 414 (5th Cir.1966), in holding that "[w]here the parties fail to agree upon arbitration as a method of breaking a deadlocked dispute over a grievance, we are cited to no provision of federal law which gives the federal courts the power to make a decision for the parties." *Fortune,* 684 F.2d at 375.

In *Fortune,* the author of that opinion pointed to no specific language in the CBA

which indicated that the result of the grievance procedure was necessarily intended to be final. In *Haynes,* on the other hand, the CBA included language indicating that the result of the fourth step would be final. *Haynes,* 362 F.2d at 415. Plaintiffs have stated that "both agreements have grievance procedures that are similar but not identical. The differences are immaterial to the issue in the case." [3] The pertinent language of the CBA states: "Should a difference arise between the Company and the Union or its members employed by the Company, as to the meaning and application of the provisions of the agreement, an earnest effort will be made to settle it," followed by the grievance and then the step procedures hereinabove set out. The union may strike only if "all negotiations have failed through the grievance procedure set forth herein." The agreement does not expressly indicate whether a strike is the only option the union has if the employer refuses to submit a grievance to arbitration. We agree with defendant that *Fortune* applies and precludes plaintiffs from bringing a cause of action under § 301 against Ring for breach of the CBA. *Fortune* is especially similar to the *Evans* case in that a strike vote was taken and failed. However, we do not believe this fact to be material under *Fortune.*

We recognize that other courts in comparable circumstances have reached a decision contrary to *Fortune. See Dickeson v. DAW Forest Products Co.,* 827 F.2d 627 (9th Cir.1987) (contract grievance procedure silent as to whether final; held strike remedy not exclusive and employee could sue in federal court for improper discharge); *Internat'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Roblin*

*Industries, Inc.,* 561 F.Supp. 288 (W.D. Mich.1983) (finding similar CBA did not produce final result, distinguishing *Fortune* ). These courts were unwilling to conclude that a strike was the employees' only resort following an unsuccessful grievance prosecution unless the CBA specifically provided such.

Plaintiffs also rely upon *Breish v. Ring Screw Works,* 397 Mich. 586, 248 N.W.2d 526 (1976), for the proposition that federal labor policy requires that the final step in a grievance procedure must be adequate to provide a procedurally fair decision. We did not approve the *Breish* rationale in *Fortune,* 684 F.2d at 375. Federal labor policy "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *United Steel Workers v. American Manufacturing Co.,* 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960), *quoted in Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). A union and an employee may choose to designate strikes and lockouts as a sole means of resolving disputes if they do so clearly and specifically. *Dickeson,* 827 F.2d at 629. *See also Huffman v. Westinghouse Electric Corp.,* 752 F.2d 1221, 1224–26 (7th Cir.1985) (rejecting *Breish* and citing *Fortune* ).

Plaintiffs also rely principally upon two Supreme Court cases, *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) and *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).[4] The latter reiterates the individual employee's right, if allegedly discharged unjustly and contrary to the CBA, to sue the employer. *Id.* at 183, 87 S.Ct. at 913. It states further:

**3.** Defendant does not challenge this assertion. There is a difference between the two CBAs which might have been deemed material in this controversy. Article IV, Section 4 of Evans' CBA provides that an "unresolved grievance *shall* be handled as set forth in Article XVI, Section 7," which in turn refers to a right to strike if "all negotiations have failed through the grievance procedure." (emphasis added). This might well infer an exclusive remedy of a strike, lockout, or other job action. Defendant did not

argue this point in the district court, and we do not reach a decision on this basis. We recognize, however, that *Fortune* might require both CBAs to be interpreted similarly.

**4.** *Vaca* is mentioned only once in *Fortune,* and then reference is made to Justice Black's dissent. 684 F.2d at 376. *Smith* is not referred to in *Fortune.*

If a grievance and arbitration procedure is included in the contract, but the parties do not intend it to be an exclusive remedy, then a suit for breach of contract will normally be heard even though such procedures have not been exhausted. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 657–658 [85 S.Ct. 614, 618–19, 13 L.Ed.2d 580]; 6A Corbin, Contracts § 1436 (1962).

*Vaca,* 386 U.S. at 184 n. 9, 87 S.Ct. at 913 n. 9.

*Vaca,* on the other hand, sets out that:

... if the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced.

....

However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures.

386 U.S. at 184, 185, 87 S.Ct. at 913, 914.

*Fortune* has been cited only in one other appellate court decision and has not again been cited by our court again in a published opinion. *Huffman v. Westinghouse Electric Corp* mentions *Fortune* as holding "where grievance denial became final because the Union did not notify employer of intent to strike, employee barred." 752 F.2d at 1225. It notes that *Fortune* is in accord with *Haynes v. U.S. Pipe & Foundry Co.,* 362 F.2d 414 (5th Cir.1966).

We believe that the CBAs in question do bring about an inference that a strike, or other job action, is the perceived remedy for failure of successful resolution of a grievance absent agreed arbitration. Such resolution, by work "stoppage or other interference" is not a happy solution from a societal standpoint of an industrial dispute, particularly as it relates to the claim of a single employee that he has been wrongfully discharged. Were we deciding the issue with a clean slate, we might be disposed to adopt the rationale of *Dickeson,* 827 F.2d 627.

We have the precedent of *Fortune,* however, and it has been reiterated as the controlling law by our court in a number of subsequent unpublished cases. We set out the most recent expression of our court concerning *Fortune:*

This circuit has concluded, in essence that regardless of whether the contractual dispute resolution mechanism results in a "final and binding" decision, the existence of that mechanism will foreclose judicial review provided we find that it was intended to be exclusive....

While we may question the wisdom of foreclosing judicial review of contracts which fail to provide for either "final" or "binding" peaceful resolution via arbitration, since the absence of such a provision cannot be taken to infer that the union (and thereby its employees) gained anything in its contract negotiations as a result, it is nevertheless well established in this circuit that a panel of this court is bound by the prior decisions of another panel of the same issues.

*Mochko v. Acme–Cleveland Corp.,* 826 F.2d 1064 (6th Cir.1987) (unpublished per curiam); *see also Agate v. General Motors Corp.,* 798 F.2d 1413 (6th Cir.1986) (unpublished per curiam), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986); *United Furniture Workers v. National Bedding,* 718 F.2d 1101 (6th Cir.1983) (unpublished per curiam).

The CBAs in these cases did provide for specific grievance procedures, finally including arbitration, if mutually acceptable. Absent arbitration, self-help appears to be the means to resolve an unsettled dispute. In this type of situation our circuit has held that an individual is barred from proceed-

ing under § 301 absent an allegation of lack of fair representation by the union. The only means to reexamine this policy would be by *en banc* consideration of the *Fortune* holding and rationale.

We are compelled by the authority herein set out to AFFIRM the decision of the district court as to both Groves and Evans.