Jeanette **FORD** et al., **Plaintiffs-Appellants,**

v.

**GENERAL ELECTRIC COMPANY,**
**Defendant-Appellee.**

**No. 16396.**

United States Court of Appeals
Seventh Circuit.

May 22, 1968.

Arthur R. O'Brien, James ' B. Rice, Chicago, Ill., for appellants; Latchford, Bianucci, Rice & O'Brien, Chicago, Ill., of counsel.

Theophil C. Kammholz, Francis F. Sulley, John P. Jacoby, Chicago, Ill., for appellee; Vedder, Price, Kaufman & Kammholz, Chicago, Ill., of counsel.

Before HASTINGS Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Class action by employees against employer to recover additional wages allegedly due for services rendered under a collective bargaining agreement.

Defendant General Electric has plants in the Chicago area, designated Hotpoint Business Operation. Local 571 Sheet Metal Workers International Association (A.F.L.-C.I.O.) represents plaintiffs.

Defendant and the union have a contract which became effective October 3, 1966.

Plaintiffs claim that a particular paragraph of Article XXII of the contract (referred to herein as the "accelerated progression" paragraph), applies to them and entitles them to more wages than they have received for their work from October 17, 1966 to March 3, 1967, just before this action was begun.

Defendant moved for summary judgment, asserting that the contract provides a method for settlement of grievances and that the issue here, of construction of the accelerated progression paragraph, has been settled accordingly. The district court agreed and awarded judgment for defendant.

It is undisputed that the issue has been processed through three steps of the grievance procedure of Article XVIII of the contract, with the union presenting the grievances in steps 2 and 3. Step 3 was completed February 13, 1967, when management gave its written answer, asserting that the accelerated progression paragraph, properly interpreted, does not apply to the plaintiffs' situations, and denying the grievances.

Article XVIII of the contract (referred to herein as the "considered settled" paragraph) provides in part: "Upon the expiration of thirty (30) days from receipt by the Union of the Company's written reply to the grievance at the Third Step, the grievance shall be considered settled and closed for all purposes unless action has been taken by the Union in accordance with Articles XIX or XX of this Agreement."

Article XIX provides for arbitration procedure. XIX,1.(a) lists several types of grievance which are to be arbitrated as a matter of right upon request of either the company or the union. The issue involved in this case is not one of these types. XIX,1.(b) provides that a grievance involving the interpretation and application of the contract other than a grievance under 1.(a) may be submitted to arbitration only with mutual agreement of the union and the company.

XIX,4. lists several types of matters which are not subject to arbitration or which no arbitrator shall have authority to decide.

XX contains the union's agreement not to strike, except for a "protected strike within the terms of the National Labor Relations Act arising out of a grievance after the * * * Grievance Procedure * * * shall have been complied with, provided that the grievance does not involve a matter subject to arbitration or a grievance which the Company has indicated in writing its willingness to arbitrate. * * * *" Any such strike "may be commenced only after the Company's final decision on such grievance" and three days notice by the union.

It appears to be defendant's position that the union could have kept the issue alive either by offering to arbitrate the issue under XIX,1.(b) or by giving a strike notice under XX within 30 days after the completion of step 3, and that because the union did neither, the issue became settled by the operation of the "considered settled" paragraph. This position is supported by the language of the paragraph, taken literally.

Plaintiffs concede that if "in fact, a strike was the proper next step after step 3 of the grievance procedure, or if, in fact, arbitration of the grievance was the required remedy, then in either case plaintiffs would be barred from bringing this suit under the well known and uncontroverted law that contractual remedies must be exhausted before recourse may be had to the courts."

Plaintiffs contend, however, that XX prohibited a strike over this grievance and that this grievance was not arbitrable under XIX.

As already indicated, XX permitted a strike arising out of a grievance after the steps required by XVIII had been fulfilled, if the grievance is not "subject to arbitration" or a grievance "which the Company has indicated in writing its willingness to arbitrate." We think that in this context "subject to arbitration" refers to grievances of a type listed

in XIX,1.(a), i. e., arbitrable as a matter of right upon request of company or union. The grievance involved in this action does not fall under XIX,1.(a), and defendant had not indicated a willingness to arbitrate, i. e., by agreement under XIX,1.(b). Hence these exceptions from grievances over which a strike is permissible are not applicable.

Plaintiffs rely, however, on the phrase "protected strike within the terms of the National Labor Relations Act", and contend that this phrase means only a strike in resistance to unfair labor practices of the employer. Plaintiffs would thus limit the grievances over which the union reserved its right to strike to those which involve unfair labor practices. Although we are aware that the phrase "protected strike" sometimes is used with that meaning, we think that would be a strained construction in this context. If plaintiffs are correct, then the union had bound itself not to strike against even an unfair labor practice unless the grievance and arbitration procedure had been exhausted.

We think the union could have given a notice of a strike over this issue without violating XX, and thus kept the issue alive notwithstanding the "considered settled" paragraph.

In Haynes v. United States Pipe & Foundry Company[1] the collective bargaining agreement provided that management's decision of a grievance at the fourth step shall be final unless the union gives notice of its intention to strike in protest, and unless such strike occurs. The fifth circuit decided that the failure of the union to take strike action made the management decision binding upon the employee involved, and prevented his resort to court action. With all respect, we question whether such a result accords with congressional policy, since it either leaves the settlement of disputed contract rights to a test of economic strength, or makes a strike the price of an opportunity for an impartial adjudication of the dispute.

We do not, however, reach that question in this case, for this contract, in our opinion, permits the union to keep the issue alive through an alternative procedure. It could have offered to arbitrate the issue under XIX,1.(b) and thus have preserved the issue from the "considered settled" paragraph.

Plaintiffs argue that the issue was not arbitrable because XIX,4. provides "that no arbitrator shall have the authority to decide any matter involving the exercise of a right reserved to management under this Agreement, including but not limited to management's right to * * * determine job classifications, standards and rates of pay * * * nor shall an arbitrator have the authority to establish or modify any wage, salary or piece rate, or job classification, or have authority to decide the appropriate classification of any employee."

Because plaintiffs' claim is that they were entitled to receive a higher wage, they argue that arbitration of the issue would have entered an area forbidden by XIX,4.

It may be a sufficient answer that if the union and company had agreed to arbitrate the issue, XIX,4. could not have stood in the way of such agreement.

But we think there would be no violation of XIX,4. in any event.

It appears that the company set hourly rates called step rates, each designated by a rate symbol, from C 1 at the lowest to C 30 at the highest. The company classified each job and assigned one of the step rates as the job rate. A new employee, when assigned to a job, would receive a starting rate below the job rate. XXII,2. provided that an employee would progress from his starting rate to the job rate according to a time schedule. The "accelerated progression" paragraph provided a speedier progression from step to step when an employee met certain standards of performance and attendance. Plaintiffs had already attained their respective job rates when the contract went into

1. (5th Cir. 1966), 362 F.2d 414.

effect. The dispute was whether the "accelerated progression" paragraph applied to them, and entitled them to a rate above the job rate when they met the standards of performance and attendance.

In our opinion, the resolution of the dispute would not involve the determination of rates of pay nor establishing or modifying a wage, or a classification in the sense those terms are used in XIX,4. If the dispute were resolved in plaintiffs' favor, the entitlement of plaintiffs to particular wage rates on the schedule would result from application of the contractual formula to the facts. Although a change in the individual's compensation would result, this would not be in conflict with XIX,4., properly construed.

We consider that there were steps which the union could have taken under XIX or XX to keep the issue alive, that there is no good reason not to give the "considered settled" paragraph its literal meaning, and that, accordingly, defendant's reply at Step 3 became the final decision of the issue.

The judgment will be affirmed.