Chester E. HUFFMAN, on Behalf of Himself and All Others Similarly Situated, Plaintiffs-Appellants,

v.

WESTINGHOUSE ELECTRIC CORPORATION, et al., Defendants-Appellees.

No. 84–1022.

United States Court of Appeals, Seventh Circuit.

Argued May 8, 1984.

Decided Jan. 8, 1985.

Robert J. Mocek, Indianapolis, Ind., for plaintiffs-appellants.

Jay Robert Larkin, Roberts, Ryder, Rogers & Scism, Indianapolis, Ind., for defendants-appellees.

Before WOOD and ESCHBACH, Circuit Judges, and KELLAM, Senior District Judge.*

ESCHBACH, Circuit Judge.

This is a class action by employees against an employer for breach of a collective bargaining agreement brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. We are asked to decide whether employees who have exhausted the remedies provided under a contractual grievance procedure and received a final adverse determination may have the merits of their grievance reviewed by a court in a breach of contract action against their employer despite the fact that they do not allege that their union breached its duty of fair representation. We hold that they may not and so affirm the district court's dismissal of the employees' claims under § 301.

## I.

In the mid-seventies, Westinghouse commissioned certain area wage surveys to determine accurate and equitable pay levels for comparable job skills among Westinghouse's employees. The wage surveys had been agreed to by Westinghouse and the International Union of Electrical, Radio and Machine Workers, AFL–CIO, Local 917 ("Union") as part of a 1976 Strike Settlement Agreement. Chester Huffman is a member of the Union and a Westinghouse employee. Huffman and other male employees in Westinghouse's Quality Control and Production Control Departments believed that the wage surveys inaccurately represented their job responsibilities. According to these employees, certain of their job responsibilities were excluded from comparison in the surveys, and Westinghouse refused to consider any portion of their jobs that were also performed by non-Union personnel. No similar restrictions were placed on the evaluations of the job responsibilities of women employed in these departments.

Huffman and other male employees filed grievances, complaining that the implementation of the surveys denied them the opportunity to compete for the highest possible wage scale. Under the grievance-arbitration procedure contained in the collective bargaining agreement between Westinghouse and the Union, a Union steward first presents the grievance to a foreman. If the grievance is not resolved at that level, up to three representatives of management and an equal number of Union representatives meet to try to resolve the grievance. If the grievance remains unresolved, the process is repeated with up to seven management representatives and an equal number of Union representatives. If no satisfactory resolution at that level is reached, the Union may appeal local management's final answer to a national appeal board, where, again, an equal number of management and Union representatives will consider the grievance. If the grievance remains unresolved at the national level, the matter may be referred to arbitration. Not all grievances are subject to mandatory arbitration, however. Certain classes of grievances are arbitrable only by agreement of the parties. If the Union disagrees with the final resolution of the grievance, and it is by its nature not subject to compulsory arbitration, the Union can request arbitration; if the company refuses, the Union's only recourse is to authorize a strike. The collective bargaining agreement contains the following finality provision:

> The Company's reply to a grievance will be considered final at any level of the grievance procedure (local or appeal) and the grievance closed, if written notification to the contrary is not received within thirty (30) days of the date of such reply.

---

* The Honorable Richard B. Kellam, Senior District Judge for the Eastern District of Virginia, sitting by designation.

The male employees' grievances were processed through every level, local and national, of the grievance procedure. The grievances were not subject to mandatory arbitration under the contract; the Union therefore requested arbitration and Westinghouse denied the request. The Union took no further action and, under the finality provision, the denial of the grievance became final.

Huffman then filed the instant action on behalf of himself and all similarly situated male employees in Westinghouse's Production Control and Quality Control Departments. Huffman's original complaint alleged that the wage survey implementation discriminated against him and members of the class by reason of their sex in violation of 42 U.S.C. § 2000e et seq. Huffman then amended the complaint, adding allegations under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, that Westinghouse had breached the collective bargaining agreement and further allegations that the Union had breached its duty of fair representation by not taking the grievances to arbitration. The complaint was amended once more to delete the allegations against the Union of a breach of the duty of fair representation, and allegations that the plaintiffs had exhausted the grievance procedure were added.[1] The district court certified the class.

Thereafter, Westinghouse moved for dismissal of the § 301 claim, arguing that the employees had received a final determination of their grievance under the collective bargaining agreement and were not entitled to proceed against the employer absent proof that the Union had breached its duty of fair representation. The district court agreed, and dismissed the employees' § 301 claims with leave to amend. When the complaint was not amended, the court dismissed the claims with prejudice. The parties settled the sex discrimination claim, and Huffman then filed a notice of appeal

to challenge the district court's resolution of his breach of contract claim.

## II.

An employee seeking a remedy for an alleged breach of a collective bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his employer under § 301 of the Labor Management Relations Act. *Clayton v. International Union*, 451 U.S. 679, 682, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–653, 85 S.Ct. 614, 616–617, 13 L.Ed.2d 580 (1965).[2] If the employee's grievance is processed through an exclusive grievance procedure and the employee receives a determination of the grievance that is final and binding under the contract, he may not then litigate the merits of his grievance unless he can show that the grievance process has been in some manner subverted. The most common way in which employees show that the result of the contractual process should be disregarded is by showing that the Union did not represent them fairly in the grievance procedure; in other words, that it breached its duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). If an employee cannot prove such a breach, his contract claim is ordinarily barred by the finality provision of the contract itself. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

In the instant action, the employees' grievances were processed through every step of the grievance procedure. The only step left open to the Union to keep the grievance alive was to notify the Company that the Company's answer to the grievance was unsatisfactory and to call a

---

1. The Union was joined as a necessary party under Fed.R.Civ.P. 19.

2. A grievance and arbitration procedure is "exclusive" if the parties are required to exhaust

the grievance machinery before seeking any other remedy for the grievance. A "nonexclusive" grievance procedure does not purport to limit the parties to their contractual remedies.

strike. This the Union failed to do. The employees do not claim that the Union's failure to take strike action constituted a breach of the duty of fair representation. Rather, they suggest two reasons why they should not now be barred from pursuing a legal remedy against their employer.

First, they argue that the fact that the union might have authorized a strike in response to the Company's ultimate denial of the grievance establishes that the grievance-arbitration procedure in their collective bargaining agreement was not intended to be exclusive. The employees rely on two of our cases, *S.J. Groves & Sons Co. v. International Brotherhood of Teamsters*, 581 F.2d 1241 (7th Cir.1978), and *Associated General Contractors v. Illinois Conference of Teamsters*, 486 F.2d 972 (7th Cir. 1973), in which we found grievance procedures that ended in permission for the parties to pursue "all economic recourse" to be nonexclusive. In both cases, the collective bargaining agreements provided for grievance procedures that culminated in the submission of the grievance to a joint labor-management committee. Under the contract, if the committee could not reach agreement, the result was a deadlock and the parties were free to resort to strikes or lockouts. The defendants in both cases argued that economic recourse was the exclusive remedy contemplated by the contract and that the court therefore was without jurisdiction to decide the dispute. We refused to "construe the agreement[s] as requiring economic warfare as the exclusive or even as a desirable method for settling deadlocked grievances." *Associated General Contractors*, 486 F.2d at 976.

The crucial difference between the contracts at issue in the cases discussed above and the one in this case is that this contract contains a finality provision. Thus, an equally divided vote of the joint appeal committee results not in deadlock, but in the Company's denial of the grievance, which becomes final under the contract if written notice to the contrary, and notice of intention to strike, is not given to the Company within a certain time period. The Union might have taken the grievances out of the finality provision by calling a strike; had it done so, this case might be closer to *Associated General Contractors* and *S.J. Groves*, for under the agreement in the instant case, the finality provision only applies to management's answer at any level of the grievance procedure, local or national. It did not do so, however, and so we find those cases distinguishable.

The employees next argue that the finality rule should only apply if there has been a failure to exhaust contractual remedies or a final decision has been reached by way of binding arbitration. We will assume that the employees have exhausted their contractual remedies. However, we cannot agree with the employees' conclusion that they should be exempt from the operation of the finality rule because their grievances were not presented to a neutral arbitrator.

The employees note that *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), which establish the finality rule, involved collective bargaining agreements with compulsory arbitration clauses, and they argue that the rule established in such cases applies only when the grievance has been determined by an arbitrator. At least one court has agreed with the employees. In *Breish v. Ring Screw Works*, 397 Mich. 586, 601, 248 N.W.2d 526, 533 (1976), the Michigan Supreme Court held that the finality rule need not be observed if the final step in the grievance procedure "is inadequate to provide an aggrieved employee with a procedurally fair decision." The collective bargaining agreement in *Breish* contained a grievance procedure that did not end in arbitration. If the union was dissatisfied with the company's answer to a grievance, it could request a strike vote from its membership. *Breish's* grievance was denied by the company and the members of his union voted not to strike. The company's denial then became final. The court found this result unacceptable, because it believed that "such a procedure

placed those 'adjudging' the substance of [the employee's] claim in a ... conflict of interest situation." *Id.* at 603, 248 N.W.2d at 534. The employees also rely on *United Brotherhood of Carpenters v. Hensel,* 376 F.2d 731, 737 (10th Cir.1967), in which the court stated that a "failure to agree that disputes shall be resolved by binding arbitration permits the parties to resort to other remedies such as work stoppages, lockouts, or the courts." However, the court made this statement in the context of resolving a dispute under a contract they had found to contain a nonexclusive grievance procedure. *Id.*

The opposite view has been taken by the two federal courts of appeals that have directly confronted the issue presented by this case. In *Haynes v. U.S. Pipe & Foundry Co.,* 362 F.2d 414 (5th Cir.1966), the employee's grievance was denied by the company after having been processed through all steps of the grievance procedure. The denial became final when the union did not notify the company of its intention to strike. The employee brought an action under § 301 against his employer for breach of the collective bargaining agreement. The *Haynes* court determined that both Congressional statements of policy [3] and previous Supreme Court cases [4] favored relegating the parties to the exclusive remedies they had provided in their agreement. The court recognized that the Supreme Court had discussed the exclusive remedy premise only in the context of collective bargaining agreements containing arbitration clauses. However, it noted that statutory policy, as expressed in § 203(d) of

the Labor Management Relations Act, 29 U.S.C. § 173(d), makes no mention of arbitration, and that, in fact, Congress had refused to prescribe compulsory arbitration as a remedy when enacting § 203(d). *Haynes, supra,* 362 F.2d at 416 n. 2. Moreover, the Supreme Court had consistently construed the policy in § 203(d) as requiring that the parties be bound by whatever grievance remedies they had negotiated. *See General Drivers Union v. Riss,* 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963) ("It is not enough that the word 'arbitration' does not appear in the collective bargaining agreement .... [I]f the award [of a joint committee] is the parties' chosen instrument for the definitive settlement of grievances ... it is enforceable under § 301.").

The *Haynes* court concluded:

The fact of the matter is that the union processed appellant's grievance up to the point of striking. The denial of his claim then became final. We believe the law to be that his claim is barred.

362 F.2d at 418. *Accord Fortune v. National Twist Drill & Tool Division, Lear Siegler, Inc.,* 684 F.2d 374 (6th Cir.1982) (where grievance denial became final because the Union did not notify employer of intent to strike, employee barred).

We questioned the result in *Hayes, supra,* in *Ford v. General Electric Co.,* 395 F.2d 157, 159 (7th Cir.1968). However, since our decision in *Ford,* the Supreme Court has given further indications that employees seeking to litigate the merits of

---

**3.** Congressional policy is expressed in § 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d):

Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement.

**4.** The *Haynes* court determined that the Supreme Court had consistently "sanctioned the [dispute resolution method] chosen by the parties in their collective agreement." 362 F.2d at 416. For instance, the Court has denied employers access to the courts where they have

previously agreed to arbitration. *See, e.g., United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Likewise, unions have been denied the right to strike where they have agreed instead to arbitration. *See, e.g., Teamsters Union v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). The Court has allowed parties to a collective bargaining agreement access to the courts without resort to a grievance procedure only when the parties themselves have agreed in their contract that the grievance procedure is not exclusive. *See, e.g., Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

grievances that have been processed to final decision must show that the decision is tainted by the bad faith of the union that processed the grievance. In *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the employee's grievance had been processed through the available grievance procedures and had ultimately been denied by a joint panel consisting of equal numbers of union and management representatives. The decision of the joint panel was final under the contract. The employee then sought to sue his employer under § 301 and his union for an alleged breach of the fair-representation duty. Summary judgment was entered for the union and employer on the ground that the employee's action was barred as untimely by New York's statute of limitations governing actions to vacate an arbitration award. The employee argued that the action should have been governed by the longer statute of limitations for breach of contract actions. The Court disagreed:

> [The employee's] characterization of his action against the employer as one for "breach of contract" ignores the significance of the fact that it was brought ... pursuant to § 301(a) of the LMRA and that the indispensable predicate for such an action is not a showing under traditional contract law that the discharge was a breach of the collective bargaining agreement, but instead a demonstration that the Union breached its duty of fair representation.

*Id.* 451 U.S. at 63, 101 S.Ct. at 1564. Later decisions of this court have relied on this language in holding that a breach of the union's duty of fair representation is a necessary element of an employee's claim under § 301 against his employer whether or not the employer raises the defense of failure to exhaust contractual remedies. *Cote v. Eagle Stores, Inc.*, 688 F.2d 32, 35 (7th Cir.1982); *see Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299 (7th Cir.1983) (fair representation claim and § 301 claim inextricably intertwined).

Moreover, unlike the Michigan Supreme Court, we are unconvinced that the employees' claim that the terms of the contract deny them procedural fairness should outweigh the employer's interest in the enforcement of the contract's finality provision. Collective bargaining is a process by which both the union and the employer concede certain points in order to gain advantages elsewhere. If the grievance procedure under this contract favors the employer, the Union (and therefore the employees) presumably gained something in return. We do not, therefore, find convincing the employees' argument that they should be able to escape the terms of the contract the Union bargained for them because another contract might have been more favorable. Nor do we find that argument to be in accordance with the policy of federal labor law that parties to collective agreements should be able to determine between themselves the manner in which they wish to resolve contractual disputes. We therefore agree with the district court that the employees' claims are barred.

### III.

For the reasons expressed above, the district court's dismissal with prejudice of the employees' claims under § 301 is affirmed.