Robert COTTRELL, Plaintiff,

v.

CANDY WORKERS UNION, LOCAL 342 OF the BAKERY, CONFECTIONERY AND TOBACCO WORKERS INTERNATIONAL UNION AFL–CIO–CLC, and Paul F. Beich Company, a corporation, Defendants.

No. 84–3523.

United States District Court, C.D. Illinois, Springfield Division.

March 19, 1986.

Darrell L. Hartweg, Bloomington, Ill., for plaintiff.

John Naylor, Bloomington, Ill., Thomas G. Harvel, Peoria, Ill., for defendants.

## OPINION ORDER

MILLS, District Judge.

Discharged employee vs. his union.

Defendants move for summary judgment.

Robert Cottrell brings this action against his employer, the Paul F. Beich Company (Beich), for breach of a collective bargaining agreement under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. He also sues the Candy Workers Union Local 342 of the Bakery, Confectionery and Tobacco International Union, AFL–CIO–CLC (union), charging that it breached its duty of fair representation by: (1) failing to prosecute a grievance to arbitration, and (2) not allowing Plaintiff to pursue arbitration on his own behalf after the union's refusal to do so.

Mr. Cottrell worked for Beich from 1979 to April of 1984 and was, during his employment with Beich, a member of the union. A collective bargaining agreement governs the relationship between Beich, its employees, and the union. Pursuant to the agreement, Beich employees are required to abide by certain work rules, one of which prohibits fighting.

While at work on April 17, 1984, Plaintiff was attacked by John Boylan, a fellow employee, and a fight ensued. According to Plaintiff's complaint, the attack was unprovoked, and Plaintiff fought only to the extent necessary to defend himself.

Two days later, on April 19, Beich discharged both Plaintiff and Boylan for their involvement in the altercation. Although company work rules prohibit fighting, Plaintiff filed a grievance, claiming that he was wrongfully discharged in that he was merely protecting himself from an unprovoked attack.

After Cottrell filed his grievance, a meeting was convened between union and company representatives, and Cottrell and Boylan, as required by the grievance procedure contained in the collective bargaining agreement (CBA). Mr. Gene Midden, the union's international representative, was also at the meeting. According to Cottrell, his presence was required because the union recognized that Beich was setting a precedent by terminating an employee for fighting, something that had not previously been done.

At this meeting and in a series of subsequent meetings provided for by the CBA (referred to as "steps"), Mr. Midden argued that on previous occasions employees had fought but had never been discharged. Beich, however, took the position that in these other alleged fights, management was never informed of the incidents when they occurred and there had been no proof that such fighting ever actually took place. After a series of meetings, Beich refused to change its position. It was therefore left to the union to decide whether to ac-

cept the company's position or take the matter to arbitration. After allowing Cottrell to address the union's general membership, the union executive committee decided to drop the matter and not take the issue to arbitration.

Cottrell claims that the manner in which his grievnce was handled evidences that the union did not meet its duty to fairly represent him. He first alleges that he was not given adequate time to prepare his case before the grievance meetings were held and that the meetings themselves lasted only a couple of minutes. Cottrell further states that not only was his participation in the meetings discouraged, but he was even asked to leave the room during discussions.

Cottrell further alleges that the union did not prosecute his grievance to arbitration because of the union officers' belief that Cottrell was a troublemaker. As evidence of this alleged personal animus against Cottrell, Plaintiff points to certain comments made by Mr. Midden to union president Virden about Cottrell's inability to get along with other employees. (Plaintiff denies that this was in fact the case, and argues that the unanimous vote of the union membership to send his case to arbitration contradicts the allegation that he does not get along with the other employees.)

The union, on the other hand, argues that it fully considered the merits of Cottrell's grievance. For instance, the union notes that Cottrell was given an opportunity to state his case before the general membership, whereupon the membership unanimously voted to authorize the union's executive board to consult with legal counsel and proceed to arbitration if necessary. Thereafter, the executive committee consulted with at least two attorneys as well as with Mr. Midden before determining that the union would not be successful in arbitrating the matter.

Although the union felt that a penalty less than termination was appropriate, they decided that in view of the fact that a physical exchange of blows occurred, it would not be in the overall best interests of the union and its members to pursue the matter to arbitration. The union was also apparently concerned about the danger of losing a case involving fighting in that it could set a precedent for future discharges on this basis.

In addition to the union's failure to prosecute his grievance to arbitration, Cottrell charges that the union breached its duty of fair representation by refusing to allow Plaintiff to arbitrate on his own behalf pursuant to Article XIV of the CBA. After the union's decision not to pursue the grievance, Cottrell sent a letter to the union requesting that he be allowed to individually arbitrate the grievance. The union, however, responded by a letter informing him that he had "exhausted his union remedies." According to Plaintiff, this letter was written despite Ms. Virden's deposition testimony that she was aware of a provision in the CBA allowing an individual employee to proceed to arbitration on his own with union approval; but that she did not know what to do with the request. Plaintiff states that instead of acting on the request herself or seeking the advice of counsel, she merely let the union's international vice president interpret the provision. Plaintiff contends that Ms. Virden's failure to adequately address this issue and to summarily deny his request for individual arbitration amounts to an arbitrary, perfunctory and bad faith processing of Cottrell's grievance.

The union's story, however, paints a different picture. They contend that after Cottrell wrote the letter to the union requesting arbitration on his own behalf, Ms. Virden obtained the advice of both Mr. Midden and Mr. Monkas, the union's vice president. They then informed Ms. Virden that under their interpretation of the CBA, the decision to arbitrate is solely up to the union, and that an individual employee has no right to arbitrate individually. Thus, the union argues, it was only after full consideration of the matter that the union decided that Cottrell had no right to arbitrate on his own behalf and that there was

no good cause to pursue the matter further.

# I

■ The instant suit involves what is sometimes called a "hybrid section 301/fair representation" claim: It is an employees' claim against his employer for breach of the CBA, combined with a claim against the union for breach of its duty to fairly represent the employee in his grievance against the employer. *See DelCostello v. Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1982). Ordinarily, an individual employee who sues his employer under section 301 of the LMRA for breach of a CBA must first attempt to exhaust any grievance or arbitration remedies provided in the CBA. *Clayton v. International Union,* 451 U.S. 679, 682, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981); *Huffman v. Westinghouse Electric Corp.,* 752 F.2d 1221, 1223 (7th Cir.1985).

■ The Supreme Court, however, has recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 78 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In such an instance—or where the grievance procedure itself has been in some manner otherwise subverted—an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance proceeding. *Bowen v. USPS,* 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983); *Hines, supra,* 424 U.S. 554, 96 S.Ct. 1048; *Huffman, supra,* 752 F.2d at 1223. Such a situation is alleged in the case at bar: Although a final decision was reached on Plaintiff's grievance, Plaintiff charges that the union breached its duty of fair representation, thereby undermining the validity of the underlying grievance procedure.

The instant suit, as a formal matter, therefore comprises two causes of action. As explained in *DelCostello:*

> The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the union ... *The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.*

*DelCostello,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91. (Citations omitted and emphasis added.)

In accordance with this standard, the issue raised by Defendants' motion for summary judgment is whether the union violated its duty of fair representation. If the union breached its duty, then Plaintiff's cause of action against the employer for breach of the collective bargaining agreement will be barred by the finality provision of the contract itself. If, on the other hand, such a breach occurred, a question of fact remains as to whether the employee's discharge was contrary to the contract. *Huffman,* 752 F.2d at 1223.

# II

■ The duty of fair representation is implied by the National Labor Relations Act because the Act allows a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain or present grievances individually or to select a minority union as their representative. *DelCostello,* 462 U.S. at 164, n. 14, 103 S.Ct. at 2290. In such a system, if individual employees are not to

be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization "to serve the interest of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). As stated by the Supreme Court in *Vaca,* the duty stands "as a bullwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Id.,* at 182, 87 S.Ct. at 912.

This and other expansive language contained in the *Vaca* decision would at first glance appear to mean that a union breaches its duty of fair representation if it fails to exercise the degree of care normally expected of union officials in prosecuting an employee's grievance. Dictum in *Vaca,* which was later repeated in *Hines,* supports this view:

> In a case such as this, when [the worker with the grievance] supplied the union with medical evidence supporting his position, the union might well have breached its duty had it ignored [his] complaint *or had it processed his grievance in a perfunctory manner.* (Emphasis added.)

Negligence, or mere oversight alone, however, is not the standard in this circuit. It is now settled law that a union does not breach its duty of fair representation unless "it *intentionally* caus[es] harm to an employee." *United Independent Flight Officers, Inc. v. United Airlines, Inc.,* 756 F.2d 1274, 1282 (7th Cir.1985) (*quoting Hoffman v. Lonza, Inc.,* 658 F.2d 519, 522 (7th Cir.1981).) *Hoffman* imposes a standard under which there must be a deliberate and unjustifiable refusal to represent the worker before it has breached its duty of fair representation. *Graf v. Elgin, Joliet & Eastern Railway Co.,* 697 F.2d 771, 777–81 (7th Cir.1983); *Dober v. Roadway Express, Inc.,* 707 F.2d 292, 294 (7th Cir. 1983); *Superczynski v. P.T.O. Services, Inc.,* 706 F.2d 200, 202–03 (7th Cir.1983). The duty "is not breached, and the employee has no remedy without substantial evidence of fraud, deceitful action or dishonest conduct." *Hoffman,* 658 F.2d at 522.[1]

### III

In accordance with these guiding principles, the primary factual issues in the case at bar are whether the union deliberately and unjustifiably refused to prosecute Mr. Cottrell's grievance to arbitration or allow Cottrell to proceed to arbitration individually. The union alleges that it honestly believed the grievance lacked merit, and that it fully considered Cottrell's arguments before deciding to drop his grievance. Cottrell, however, disputes these contentions. As evidence that the union acted in bad faith, he charges that the union's international vice president held personal animus toward him, believing that he was a troublemaker; and points to statements to this effect made by Midden to union president Virden in Ms. Virden's deposition transcript. (See deposition of Ms. Virden, at p. 72.) Cottrell also claims that the manner in which his grievance was processed—a lack of time to argue his case and the lack of meaningful consultation by union officials—can reasonably support the inference that the union acted in bad faith.

A further allegation which Cottrell believes supports an inference of bad faith is the union's unjustifiable and summary refusal to allow him to present his grievance individually to Beich after the union's decision to drop the matter. Both parties cite *Christopher v. Safeway Stores, Inc.,* 644

---

1. There are a variety of reasons why this standard is imposed in this circuit. One reason is that the LMRA does not purport to create a private damage remedy against unions, but rather seeks to insure the basic fairness and honesty of their representation. Union officials are not professional advocates, and it would be unrealistic to try to hold them to the same standard as one. *Graf,* 697 F.2d at 779. Further, the intent standard protects the long-standing objective of federal labor law by minimizing judicial intervention in labor disputes normally resolved by arbitration. *United,* 756 F.2d at 1282. *See generally Hoffman,* 658 F.2d at 523–25; *Graf,* 697 F.2d at 779–81.

F.2d 467 (5th Cir.1981), where the Court held that the rubric of fair representation does not grant an employee the absolute right to have a grievance taken to arbitration *by the union* without reference to the CBA; rather, the union has the right to drop a grievance which it justifiably believes lacks merit. *Id.* at 472.

Referring to the CBA in this case, section 14.06 states as follows:

> No individual employee or member of the Union shall have the right to invoke the arbitration provisions hereof without the prior written consent of the Union.

Defendants argue that this sentence is merely a restatement of section 9(a) of the NLRA, 29 U.S.C. § 159(a), which provides:

> Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a suit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours or [sic] employment, or other conditions of employment: *Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative,* as long as the adjustment is not inconsistent with the terms of a collective bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment. (Emphasis added.)

Even assuming, *arguendo*, that § 14.06 of the CBA is merely intended to be a restatement of § 9(a), the section clearly grants an individual employee the right to at least attempt to have a grievance adjusted outside the contractual procedure. Section 14.06 of the CBA adds the additional requirement of union consent before such adjustment may be attempted, but does not appear to otherwise limit an individual employee's right to invoke the grievance procedures on his own behalf.

Defendants argue, however, that Beich would not in any event agree to arbitrate a matter such as Cottrell's discharge without full union participation, and that allowing Cottrell to individually arbitrate the matter would totally undermine the agreed upon procedure for resolving disputes. Although it is correct that individual presentation of grievances does to some extent undermine the federal policy of exclusive representation by the union, § 9(a) clearly crafts an exception to exclusivity by allowing an employee to at least attempt individual adjustment of a grievance. This exception provides some minimal protection of an employee's individual rights where he feels he is being inadequately represented. Thus, the alleged summary denial of Cottrell's request to arbitrate on his own behalf raises material factual issues when combined with his other allegations of bad faith.

### Conclusion

Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). "In determining whether an issue of material fact exists, the court must construe the facts alleged in the light most favorable to the party opposing the motion for summary judgment." *Janowiak v. City of South Bend,* 750 F.2d 557, 559 (7th Cir.1984). In *Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97 (7th Cir.1985), this circuit noted that summary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent. *Accord White Motor Co. v. United States,* 372 U.S. 253, 259, 83 S.Ct. 696, 699–700, 9 L.Ed.2d 738 (1963) (summary judgment inappropriate "where motive and intent play leading roles"); *Pfizer, Inc. v. International Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir.1976) ("[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith

and other subjective feelings play dominant roles").

Similarly, in the context of this case, where bad faith is in issue, the facts alleged beyond the mere refusal to arbitrate at least raises questions of motive, design, and intent—questions which cannot be answered upon a motion for summary judgment. *See Baldini v. Local Union No. 1095*, 581 F.2d 145, 151 (7th Cir.1978).

It is clear that the union's refusal to prosecute Plaintiff's grievance and its refusal to allow Cottrell to proceed individually was deliberate. The issue is whether this refusal was (1) unjustifiable, and (2) motivated by personal animus or bad faith. Material factual issues exist as to these questions.

*Ergo*, Defendants' motion for summary judgment is DENIED.