826 F.2d 1064
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nicholas MOCHKO (86-3621), Edward Frank Dombroski (86-3622),
Arpad J. Torma (86-3623), and Henry Szymczyk
(86-3624), Plaintiffs-Appellants,
v.
ACME-CLEVELAND CORPORATION, Defendant-Appellee.
 Nos. 86-3621 to 86-3624
 United States Court of Appeals, Sixth Circuit.
 Aug. 10, 1987.
 
 Before GUY and BOGGS, Circuit Judges, and WOODS, District Judge.[1]
 PER CURIAM.
 
 
 1
 Plaintiffs Mochko, Dombroski, Torma, and Szymczyk filed separate actions under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, alleging breach of contract by their employer, Acme-Cleveland Corporation (the Company).[2] The complaints arose as a result of the Company's denial of severance pay upon plaintiffs' retirement. Since all the claims involved the same issues and questions of law, they were consolidated in the district court and on appeal. The trial judge ruled that plaintiffs were required to allege breach of their union's (Mechanics Educational Society of America (AFL-CIO), Local 19) duty of fair representation and failure to do so justified dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The court further granted the Company's motion for summary judgment against plaintiffs Dombroski, Torma, and Szymczyk for failure to file their complaints within the six-month time limit mandated for such suits by DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983). For the reasons which follow, the district court's order will be affirmed.
 
 I.
 
 2
 Plaintiffs' initial complaints challenged the interpretation of language contained in the parties' collective bargaining agreement supplement (the 'Supplemental Agreement') regarding the entitlement of certain employees to severance pay upon the relocation of operations by the Company. All were members of the union in good standing during their employment with the Company. The Supplemental Agreement provided for the terms and conditions applicable to employees represented by the union who might be affected by the Company's transfer of all or part of its operations from the Company's Cleveland plants to any other Company plants. Part of the union's concern during negotiation of the Supplemental Agreement was to obtain favorable terms for employees who were eligible for retirement at the time the Company reduced or ceased operations at its Cleveland plants. The final modification relevant to this appeal was apparently presented to and approved by the membership in the following form:
 
 
 3
 Appendix B--Supplemental Agreement, 3(e)(iii)
 
 
 4
 Any employee who has thirty years or more of credited service and has reached age fifty-five, whose job has been eliminated by transfer to another location will be entitled to severance pay and also have the right to an unreduced retirement benefit.
 
 
 5
 It is the plaintiffs' contention that there was nothing in this tentative agreement indicating that any other conditions were attached to the modification and that it was the union's understanding that employees meeting the prerequisites of this one-sentence modification were automatically entitled to both severance pay and unreduced pension benefits.
 
 
 6
 However, when the approved modification was added to the Supplemental Agreement, and that Agreement was read in its entirety, the modification's applicability was circumscribed by another provision of the Agreement.
 
 
 7
 Paragraph (3)(e)(iii) provided in full as follows:
 
 
 8
 An employee of the Coit Road plants age 55 to 65 who is terminated as a direct result of the transfer of jobs to such other plant may take a layoff in accordance with the provisions of Article VIII of the Agreement, or, if eligible, he/she may apply for such early retirement benefits as he/she may be entitled to under the provisions of Article II, Section 2(b)(ii), of the Company's Hourly Rated Employees Pension Plan. In the event that the employee receives said retirement benefits, he/she shall be eligible for severance pay as provided for herein. Any employee, who has thirty (30) years or more of credited service and has reached age 55, whose job has been eliminated by transfer to another location will be entitled to severance pay and also have the right to an unreduced retirement benefit.
 
 
 9
 (Emphasis added).
 
 Paragraph 5 states as follows:
 
 10
 If the Company transfers jobs to any other plant located beyond fifty (50) statute air miles of the Burke Lakefront Airport, the employees of the Coit Road plants affected by such transfer shall exercise their seniority rights to remain at the Coit Road plants on whatever jobs they may be entitled to in accordance with Article VIII of the Agreement. If they are unable to remain at the Coit Road plants, they may exercise one of the options for which they are eligible under the provisions of item 3(e) of this Supplemental Agreement.
 
 
 11
 (Emphasis added). This contract modification, and others, took effect in 1979.
 
 
 12
 In 1981, an employee of a Cleveland plant, Robert Cowley, was displaced by the relocation of his position to another plant and, being over 55 and having in excess of 30 years with the Company, he chose to retire. When the Company notified him that, in its view, he was not entitled to severance pay since he failed to exercise his bumping rights as mandated in Paragraph 5 of the Supplemental Agreement, a grievance was instituted.[3] The contractual grievance procedure consists of a three-step appeal process followed by a 60-day 'mediation period' during which the union may not strike nor the Company lockout any employee. The Mediation Committee's findings following investigation of the grievance are to be 'issued as a recommendation to both parties to th[e] Agreement,' but there is no provision for final resolution via binding arbitration. It is undisputed that this grievance was prosecuted through all stages of this procedure. However, the final result of mediation was an impasse with both parties agreeing to leave the grievance 'open and unresolved.' The only option open to the union at that point, in the absence of a finality clause or provision for arbitration, was to initiate a strike. The union decided not to strike, but to leave to the affected employees the pursuit of judicial suits under Sec. 301.
 
 
 13
 Within the next six months, the four plaintiffs in the case at bar also retired upon the transfer of their previous work to another location. They were notified by the Company that failure to exercise their bumping rights would preclude receipt of severance pay upon retirement, but plaintiffs adhered to their decisions to retire. All were formally notified of their denial of severance pay within five days or less from their dates of retirement in January and February of 1982. Plaintiff Mochko filed his complaint in the federal district court in April of 1982; Dombroski filed in November, 1982; and Torma and Szymczyk filed in January of 1983.
 
 
 14
 The cases were removed and consolidated in federal district court, and plaintiffs moved for summary judgment on the ground that the language of the contract modification clearly and unambiguously entitled them to both severance pay and unreduced retirement benefits. Defendant then moved to dismiss pursuant to Rule 12(b)(6) or, in the alternative, for partial summary judgment against the three plaintiffs who had filed their claims beyond the six-month statutory limit imposed by the Supreme Court for all hybrid Sec. 301 actions in DelCostello. The trial judge granted defendant's motions. In so ruling, he noted that
 
 
 15
 [t]here is a question as to whether each plaintiff exhausted the grievance procedure. However, defendant concedes that plaintiff Cowley has done so. Plaintiffs assert that the grievance was processed on behalf of all the plaintiffs. This issue will not be discussed at this time. It is not disputed that at least one grievance was processed through the grievance procedure.
 
 
 16
 Despite his failure to specifically resolve the issue of exhaustion, the district judge found dismissal appropriate primarily on the authority of our opinion in Fortune v. National Twist Drill & Tool Division, Lear Siegler, Inc., 684 F.2d 374 (6th Cir. 1982). In Fortune, two employees brought a straight Sec. 301 action against their employer for wrongful discharge. The employees did not allege that their union breached any duty of fair representation. The union had prosecuted their grievances through the grievance procedure without agreement being reached. The contract at issue in Fortune did not provide for arbitration. Rather, it stated that the union had the option to strike if 'all negotiations have failed through the grievance procedure.' Id. at 375. However, the union membership voted not to strike. We held that, even in the absence of an arbitration clause which would break a deadlock in a grievance dispute, the federal courts may not be resorted to for that purpose. Id.
 
 
 17
 As a result, the district court concluded that plaintiffs were required to bring a hybrid Sec. 301 suit against both their union and employer, alleging some breach of the union's duty of fair representation. Since such allegations had not been made and, in fact, plaintiffs had repeatedly denied any breach of duty on the union's part, the case was dismissed. Finally, as to the three plaintiffs who had filed past the limitations period for such hybrid suits (Dombroski, Torma, and Szymczyk), the court entered summary judgment in favor of the Company.
 
 II.
 
 18
 Plaintiffs raise two arguments which must be addressed in resolving this appeal. First, they contend that their status as retirees at the point in time when they would have been prosecuting their appeals relieves them of the duty of bringing a hybrid action, since it is well established that retirees are not 'employees' within the meaning of the LMRA and, therefore, the union owes them no duty of representation. Second, they allege that, since the contract did not provide for arbitration or other 'final and binding' resolution of the grievances, it should not be held to have been intended as the parties' exclusive dispute resolution mechanism. Therefore, they argue that judicial resolution of either unresolved grievances or, alternatively, those grievances relating to matters not work-related and therefore not covered by the grievance procedure is permissible. We will address these allegations seriatim.
 
 A. Plaintiffs' Status as Retirees
 
 19
 It is settled law that retirees, not meeting the definition of 'employees' under the Labor Management Reporting Act, 29 U.S.C. Sec. 152(3),[4] are not entitled to representation by the union, since such representation would actually give rise to a conflict of interest between the demands and concerns of active employees and retirees. Allied Chemical & Alkali Unit Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157 (1971). We have recognized that a union does not have the same interest in enforcement of retirees' contractual rights as it has in the terms and conditions of employment of current employees. International Union, United Auto Workers v. Yard-Man, Inc., 716 F.2d 1476, 1484 (6th Cir. 1983), cert. denied, 465 U.S. 1007 (1984). We also made clear in Yard-Man that '[e]ach retiree has an undisputable and effective remedy against the employer for a breach of contract under Section 301(a).' Id. at 1485.
 
 
 20
 We do not dispute these general principles; however, they do not apply to this case. In Pittsburgh Plate Glass, the issue was whether the employer had committed an unfair labor practice by bargaining directly with pensioners concerning the employer's mid-term unilateral modification of ongoing retirement health insurance benefits. Suit was initiated by the union, not the retirees. The employer's practice about which the union complained occurred after each affected ex-employee had retired and concerned the negotiation of a change in pension benefits. Similarly, in Yard-Man, the issue was whether an employer may settle contractual disputes over retiree benefits without notice to or consent of the union. 716 F.2d at 1484-85. The employer had attempted to terminate life and health insurance benefits after the employee's retirement. Suit was brought by the union, not the affected ex-employees. In neither of those cases did the issue concern a change or modification of benefits which had occurred while the retiree was an employee. Here, the contract modification in question was ratified in 1979. Presumably, plaintiffs, as current employees, had the opportunity to vote on that modification. Furthermore, each employee was well aware of the Company's position from the result of co-worker Cowley's grievance on this severance pay issue and each was notified of his denial before, albeit shortly before, his retirement.
 
 
 21
 Plaintiffs' reliance on Merk v. Jewel Food Stores Div., Jewel Companies, Inc., 641 F. Supp. 1024 (N.D. Ill. 1986), is misplaced for the same reasons. Merk involved the right of some two thousand ex-employees of a supermarket chain to sue their former employer under Sec. 301 because the employer had settled a wage dispute with their former union which specifically excluded them. The court observed that the union had used the ex-employees as a 'bargaining chip' in obtaining the collective bargaining agreement. The court noted that, since the union could not fairly have represented the former employees consistent with its duty to its active members, it should not have been permitted to cut them loose with impunity. Id. at 1029-30. Once again, the factual predicate for the court's conclusion in Merk, i.e., unilateral action which alters ex-employees' rights after their severance, is absent here.
 
 
 22
 The Supreme Court has expressly pointed out the employment-related nature of severance pay disputes:
 
 
 23
 Grievances depending on severance claims are not critically unlike other types of grievances. Although it is true that the employee asserting the claim will necessarily have accepted his discharge as final, it does not follow that the resolution of his claim can have no effect on future relations between the employer and other employees. Severance pay and other contract terms governing discharge are of obvious concern to all employees, and a potential cause of dispute so long as any employee maintains a continuing employment relationship.
 
 
 24
 Republic Steel v. Maddox, 379 U.S. 650, 656 (1965). Under the parties' contract here, severance pay was provided for all employees terminated by reason of job elimination, not just for those eligible for retirement. Therefore, since we conclude that the severance pay issue is one which affected plaintiffs in their status as employees and not solely retirees, and that the modification at issue as well as their notice of denial occurred while they were employees, we reject the argument that the union owed them no duty of fair representation simply because they were, in fact, retired at the point in time when the grievances would have been prosecuted.
 
 B. The Scope of the Grievance Procedure
 
 25
 Resolution of plaintiffs' second argument requires an assessment of both whether the parties' grievance dispute resolution mechanism produced a result which was both 'final' and 'binding,' and whether they intended that the grievance procedure be the employees' exclusive remedy.[5] This is a thorny issue which has been coming up with increasing frequency with respect to contracts which do not mandate arbitration as the final step in the grievance procedure, and one on which the courts are divided.
 
 
 26
 Initially, the Fifth Circuit held that, in the absence of a binding arbitration clause, the parties would be 'relegated to the remedies which they provided in their agreement,' even though that remedy was a strike. Haynes v. United States Pipe & Foundry Co., 362 F.2d 414, 417 (5th Cir. 1966). However, a potentially influential factor in the court's decision was the existence of a clause specifying at Step 4 that the decision of the Plant Manager would be 'final and binding' upon all parties absent timely notice by the union of its intention to strike. Almost twenty years later, and with no citation to Haynes, the Fifth Circuit, when faced with a contract containing a grievance provision which merely stated that a specified committee shall meet 'to dispose of' grievances, held that such provision 'does not create the finality that would preclude [the employee] from pursuing his Sec. 301 claim in federal court or that, absent an allegation of breach of duty by the Committee, would bring his suit within the holding of DelCostello.' Smith v. Kerrville Bus Co., 748 F.2d 1049, 1054-55 (5th Cir. 1984). In upholding the employee's ability to bring a straight Sec. 301 claim against his employer, the court also noted that the 'contract does not involve any agreement to submit disputes to arbitration or 'those consensual processes that federal labor law is chiefly designed to promote' . . .. It does not provide for any impartial arbiter and gives no indication that it was meant to be a substitute for litigation.' Id. at 1054 (citation omitted).
 
 
 27
 In United Brotherhood of Carpenters and Joiners v. Hensel Phelps Construction Co., 376 F.2d 731 (10th Cir.), cert. denied, 389 U.S. 952 (1967), the employer sued the Carpenters Union for breach of contract under Sec. 301. The court refused to find the applicable grievance mechanism exclusive, stating that:
 
 
 28
 A failure to agree that disputes shall be resolved by binding arbitration permits the parties to resort to other remedies such as work stoppages, lockouts, or the courts. Compliance with the dispute procedure . . . was effected by the meeting of July 24, which resulted in a deadlock. . . . Thus after the contractual dispute procedure proved ineffective to resolve the dispute, the parties were free to pursue their other remedies.
 
 
 29
 Id. at 737.
 
 
 30
 In contrast, the Seventh Circuit has upheld the exclusivity of a contract which did not provide for neutral arbitration. Huffman v. Westinghouse Electric Corp., 752 F.2d 1221 (7th Cir. 1985). In Huffman, although the contract did not contain an arbitration clause, it did contain a 'finality provision' (much like the one in Haynes) which specified that the company's reply to a grievance at any level was final if written notification of the union's intent to strike was not received timely. Id. at 1222. In rejecting the argument that the lack of arbitrability rendered the grievance procedure nonexclusive, the court distinguished an earlier similar case in which the court had refused to "construe the agreement[ s] as requiring economic warfare as the exclusive or even as a desirable method for settling deadlocked grievances." Id. at 1224 (quoting Associated General Contractors v. Illinois Conference of Teamsters, 486 F.2d 972, 976 (7th Cir. 1973)). The court found that the contract in Huffman differed in one crucial respect--the existence of the finality clause. It found this clause significant, since the fact that the grievance procedure favored the employer in this respect presumably indicated that the union had gained something in return during the negotiations. Huffman, 752 F.2d at 1226. As a result, the court concluded that breach of the union's duty of fair representation was a necessary element of an employee's Sec. 301 action against his employer 'whether or not the employer raises the defense of failure to exhaust contractual remedies.' Id.
 
 
 31
 This circuit has concluded, in essence, that regardless of whether the contractual dispute resolution mechanism results in a 'final and binding' decision, the existence of that mechanism will foreclose judicial review provided we find that it was intended to be exclusive. Fortune v. National Twist Drill & Tool Division, Lear Siegler, Inc., 684 F.2d 374 (6th Cir. 1982). In Fortune, the contract contained a four-step grievance procedure which concluded with a provision that the union could strike if all negotiations failed.' Id. at 375. Despite the apparent lack of a 'finality clause,' we held that '[w]here the parties have failed to agree upon arbitration as a method of breaking a deadlocked dispute over a grievance, we are cited to no provision of federal law which gives the federal courts the power to make the decision for the parties.' Id. Therefore, we concluded that a claim for breach of the union's duty of fair representation was a precondition to an assertion of the employer's breach of contract. Id. at 376. Such a hybrid Sec. 301 case would necessarily, then, be governed by the six-month statute of limitations set forth in DelCostello.
 
 
 32
 While we may question the wisdom of foreclosing judicial review of contracts which fail to provide for either 'final' or 'binding' peaceful resolution via arbitration, since the absence of such a provision cannot be taken to infer that the union (and thereby its employees) gained anything in its contract negotiations as a result, it is nevertheless well established in this circuit that a panel of this court is bound by the prior decisions of another panel on the same issue(s). Salmi v. Secretary of HHS, 774 F.2d 685, 689 (6th Cir. 1985). Since we view Fortune as controlling here, the district court's reliance on that case was well founded.[6]
 
 
 33
 In conclusion, we find that plaintiffs' severance pay claims involved work-related benefits and implicated mainly their status as employees and not retirees. Moreover, the contractual grievance procedure, while not capable of producing a 'final and binding' resolution, resulted from the parties' collective bargaining efforts and constitutes their exclusive dispute resolution scheme. Therefore, plaintiffs were required to allege breach of their union's duty of fair representation before being permitted to reach their breach of contract claim against the employer. Failing this, the district court's order of dismissal against all plaintiffs and grant of summary judgment against Dombroski, Torma, and Szymczyk for failure to file their hybrid action timely pursuant to DelCostello will be AFFIRMED.
 
 
 
 [1]
 Honorable George E. Woods, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 A fifth plaintiff, Robert Cowley, also filed a complaint with respect to this issue and his case was consolidated and decided with the other four. However, he has not joined in the appeal to this court
 
 
 [3]
 The plaintiffs submitted affidavit testimony to the effect that Cowley's grievance was prosecuted on behalf of all ex-employees who had then been denied severance pay as well as all future retirees who were denied these benefits. The district court declined to address this 'group exhaustion' claim and we follow suit, since it is not necessary to reach this issue under our resolution of the case
 
 
 [4]
 29 U.S.C. Sec. 152(3) provides, in pertinent part:
 The term 'employee' shall include any employee and shall not be limited to employees of a particular employer, unless this chapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment.
 
 
 [5]
 In their reply brief, plaintiffs raise the contention that they were not even required to file grievances since, by its terms, their grievance was not 'connected with their work,' and the contractual grievance procedure applies only to such grievances. Since we find no evidence that this argument was raised with the court below, we will not address it on appeal
 
 
 [6]
 Plaintiffs draw our attention to our recent decision in Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210 (6th Cir. 1987), as support for their case. In Apponi, ex-employees of a closed plant filed suit against their employer for breach of contract in the company's failure to pay retirement benefits. We did not require plaintiffs to file a hybrid action since we found that their claim 'does not implicate the breach of the union's duty of fair representation.' Id. at 1216. We further found that '[b]ecause the collective bargaining agreement and pension plan did not permit or require grievance and arbitration of disputes arising under the pension plan, plaintiffs' claims should not be dismissed for failure to exhaust contractual remedies. Id. at 1217. Apponi is distinguishable. The employer's plant had completely ceased operations, thereby idling permanently a substantial number of employees. As such, they were no longer 'employees' within the definition of the Act, and, the union owing them no Duty, need not be joined in their breach of contract action against the employer