Danny SHIVERS, Plaintiff,

v.

SAGINAW TRANSIT SYSTEM, Defendant.

No. 89–CV–10086–BC.

United States District Court, E.D. Michigan, N.D.

Sept. 8, 1989.

William T. Street, Klimaszewski & Street, Saginaw, Mich., for plaintiff.

John A. Decker, Braun, Kendrick, Finkbeiner, Schafer & Murphy, Saginaw, Mich., for defendant.

## MEMORANDUM OPINION

CHURCHILL, Chief Judge.

This case presents an interesting question of first impression concerning the re-

fined policy manual leg of the Michigan *Toussaint* doctrine. Because the Court finds that employees who are covered by collective bargaining agreements cannot establish the fairness consideration necessary to support a cognizable *Toussaint* policy manual claim under Michigan law, the Court shall dismiss Count I of Plaintiff Danny Shivers' complaint.

### The Factual Context

The relevant facts are not in dispute. Plaintiff Shivers worked for Defendant Saginaw Transit System ("Saginaw Transit") as a bus driver from August 24, 1981 through April 16, 1986. During his tenure with Saginaw Transit, Plaintiff Shivers was represented by the United Steelworkers of America, Local 9036; his employment at the time of his discharge was governed by a collective bargaining agreement.

In March of 1986, Plaintiff Shivers reported to the company dispatcher that he felt sick. Saginaw Transit Superintendent of Operations Patrick Dean therefore sent Shivers to be treated at a Redi–Med facility. Before receiving treatment, Plaintiff Shivers "went home, rested, showered, and consumed two 12 ounce cans of beer at his residence[.]" *See* Complaint, ¶ 10. Then Shivers drove to the Redi–Med Center where he was examined. The examination included the taking of a urine specimen that was subsequently sent to a lab in Clare, Michigan for testing at the direction of Saginaw Transit. When the lab results indicated the presence of alcohol in Plaintiff Shivers' urine sample, Defendant Saginaw Transit disciplined Shivers for violating the "Alcohol Rule" contained in the company's personnel manual. *See* Complaint, ¶ 13.

On March 28, 1986, Plaintiff Shivers signed a "form contractual agreement drafted by the company which required plaintiff to 'submit to a blood or urine test at any time the Company has suspicion of alcohol use' and which declared 'any reoccurrence of alcohol in the blood or urine during work or the refusal to submit immediately to either a blood or urine test in the future will result in immediate dismissal.' " *See* Complaint, ¶ 14. According to the complaint, the plaintiff was compelled to choose between signing the agreement and losing his job.

On April 14, 1986, when Plaintiff Shivers returned to his job from a one-week vacation, Dean ordered the plaintiff to submit to a blood alcohol test. *See* Complaint, ¶ 15. When the test resulted in a finding of .004% alcohol, Defendant Saginaw Transit discharged Plaintiff Shivers effective April 16, 1986. On April 18, 1986, the plaintiff's union filed a grievance on his behalf. *See* Shivers Affidavit, ¶ 3. The company denied the grievance, however, and the plaintiff's union chose not to seek arbitration.[1] *See id.,* ¶ 4.

Plaintiff Shivers filed this action in Saginaw County Circuit Court on February 15, 1989 stating claims in two counts: (1) breach of the "alcohol rule" contained in the Saginaw Transit policy manual; and (2) race discrimination in violation of the Michigan Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2101 *et seq.* Defendant Saginaw Transit promptly removed the case based on diversity, *cf.* 28 U.S.C. § 1332, and then filed a motion to dismiss Count I as preempted by § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185.[2]

1. Plaintiff Shivers also filed a claim with the MESC in 1986, which resulted in an August 20, 1986 ruling for the plaintiff by Referee Epps. The value of that finding in this case is minimal at best, though. As both the Michigan Supreme Court and the Sixth Circuit have recently made clear, MESC determinations are not to be given collateral estoppel effect. *See Storey v. Meijer, Inc.,* 431 Mich. 368, 429 N.W.2d 169 (1988); *Polk v. Yellow Freight System, Inc.,* 876 F.2d 527, 533 (6th Cir.1989) (citing *Storey*).

2. Defendant Saginaw Transit wisely has not argued that the race discrimination claim stated in Count II is preempted by § 301. *See, e.g., Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, ——, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410, 423 (1988) ("[T]he mere fact that a broad contractual protection against discriminatory—or retaliatory—discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract.").

The parties briefed the § 301 preemption question based on the assumption that, under *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), a policy manual can give rise to contractual rights. On June 20, 1989, the court heard oral argument on the question of whether a *Toussaint*-type contract claim can survive § 301 preemption in light of *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (holding that claim upon employment contract created outside the collective bargaining process is not preempted by § 301). During the course of oral argument, however, the Court expressed a more fundamental concern that Plaintiff Shivers' Count I policy manual claim might not even be a breach of contract claim.

The Court's concern was confirmed after oral argument when the Court obtained copies of the Michigan Supreme Court's June, 1989 opinions in two *Toussaint* cases. *See Bankey v. Storer Broadcasting Co.*, 432 Mich. 438, 443 N.W.2d 112 (1989) (on certified question from the United States Court of Appeals for the Sixth Circuit); *Bullock v. Automobile Club of Michigan*, 432 Mich. 472, 444 N.W.2d 114 (1989). Therefore, the Court issued an order scheduling further briefing and oral argument on the issue defined by the Court: can a collective bargaining employee even state a claim under Michigan law based upon the Michigan Supreme Court's refined *Toussaint* policy manual theory? As the scheduling order notes, this issue has *nothing* to do with § 301 preemption. Rather, it reflects the threshold inquiry into whether Plaintiff Shivers can state a claim under state law, as opposed to the later inquiry into whether a valid state claim is nonetheless preempted in a certain case by § 301 of the LMRA. *Cf. Miller v. Norfolk & Western Ry. Co.*, 834 F.2d 556, 560 (6th Cir.1987) ("[W]hile a state cause of action might not be preempted generally because it conflicts with a federal statute, a claim based on that state cause of action may still be preempted when it comes within the scope of the LMRA, even if section 301 is not invoked by the plaintiff."). Because the issue defined by the Court in this diversity case is a question of state law, the Court must look to Michigan substantive law in resolving the issue. *See, e.g., Bailey v. V & O Press Co. Inc.*, 770 F.2d 601, 604 (6th Cir.1985) (explaining the *Erie* doctrine and identifying various sources of state law).

### *The Legal Effect of Policy Manuals After* Bankey *and* Bullock

For years, both the policy manual and oral promise prongs of *Toussaint* seemed to rest upon contractual principles. Indeed, the Michigan Supreme Court in *Toussaint* explained its holding in the following terms:

> We hold only that an employer's express agreement to terminate only for cause, *or statements of company policy and procedure to that effect*, can give rise to rights *enforceable in contract.*

*Toussaint*, 408 Mich. at 610, 292 N.W.2d 880 (emphasis added); *accord Dell v. Montgomery Ward and Co., Inc.*, 811 F.2d 970, 971 (6th Cir.1987) (quoting and discussing *Toussaint*). In *Bullock*, the Michigan Supreme Court reaffirmed the notion that the oral promise prong of *Toussaint* is, in fact, based on contract principles. *See Bullock*, 432 Mich. at 482–85, 444 N.W.2d 114. In *Bankey*, however, the Michigan Supreme Court expressly eschewed a contractual approach to the policy manual prong of *Toussaint*. *See Bankey*, 432 Mich. at 454, 443 N.W.2d 112. Although Defendant Saginaw Transit argues that the Michigan Supreme Court could not possibly have meant what it said in *Bankey*, Justice Boyle's majority opinion in *Bullock* amplifies the point that the policy manual leg is *not* contractual:

> Policy manuals in this situation were enforceable not as express promises, in quasi contract, or because of promissory estoppel, but because the Court under its common-law authority recognized the enforceability of "a situation 'instinct with an obligation,'" an obligation *distinct from and independent of contract analysis.*

*Bullock*, 432 Mich. at 480, 444 N.W.2d 114; *accord Bankey*, 432 Mich. at 454, 443 N.W.2d 112. Thus, the Court must consid-

**602**

er the adequacy of Plaintiff Shivers' policy manual claim in terms of "a situation 'instinct with an obligation,'" *see Bankey,* 432 Mich. at 454, 443 N.W.2d 112; *Bullock,* 432 Mich. at 480, 444 N.W.2d 114, rather than in terms of traditional notions of contract law including promissory estoppel.

### Policy Manuals in the Collective Bargaining Process

Plaintiff Shivers unsuccessfully grieved his discharge. In asserting a *Toussaint* policy manual claim, he is essentially asking for a second bite at the apple. That is, he wants this Court to do what the grievance process did not accomplish—declare that his employer discharged him in contravention of the policy manual's "alcohol rule." The Court is only empowered to render such a ruling if the policy manual gives rise to "a situation 'instinct with an obligation'" under the circumstances of this case. *See Bankey,* 432 Mich. at 454, 443 N.W.2d 112.

As a matter of policy, the recognition of rights based on the terms of an employee manual is sound when no other mechanism exists for enforcement of policy manual terms. Absent the cause of action recognized in *Toussaint* and refined in *Bankey* and *Bullock,* an employer not otherwise bound by a collective bargaining agreement could reap the benefits of improved employee morale without shouldering the burden of abiding by the policy manual terms that engender the improved morale. Indeed, this was the essence of the Michigan Supreme Court's reasoning in *Toussaint. See Toussaint,* 408 Mich. at 613, 292 N.W.2d 880.

In contrast, an employer who is bound by a collective bargaining agreement could not make illusory promises in policy manuals even if the Michigan Supreme Court had not decided *Toussaint* as it did. As *Florida Power Corp. v. I.B.E.W.,* 847 F.2d 680 (11th Cir.1988), illustrates, a collective bargaining worker who is discharged via a policy manual term can seek (and often obtain) redress through the grievance pro-cess. *See id.* at 681 (summarizing arbitrator's award of reinstatement). In fact, Plaintiff Shivers' grievance of his discharge (albeit unsuccessful) illustrates the channel available to collective bargaining employees aggrieved by operation of their employers' policies. Simply put, collective bargaining workers do not require the protection that the Michigan Supreme Court viewed in *Toussaint* as vital to otherwise-unprotected workers. Moreover, as the Sixth Circuit recently noted, "courts have consistently favored the resolution of labor disputes through arbitration where a CBA so provides." *Groves v. Ring Screw Works,* 882 F.2d 1081, 1084 (6th Cir.1989). For these reasons, the considerations that militate in favor of recognizing a cause of action outside the context of collective bargaining agreements do not support extension of such a claim to workers who have the grievance process at their disposal. That is, the distribution of policy manuals to collective bargaining employees does not give rise to "a situation 'instinct with an obligation'" above and beyond the obligation imposed by the operative collective bargaining agreement.[3]

Because Plaintiff Shivers concedes that he worked under the protection of a collective bargaining agreement, the Court finds that he cannot state a claim under the policy manual prong of the Michigan *Toussaint* doctrine. Accordingly, the Court shall dismiss Count I with prejudice for failure to state a claim upon which relief can be granted.

**3.** This does not suggest, however, that such a claim would or would not be preempted if cognizable under state law. The Court need not reach that question to resolve Count I.